Statement of Facts.

## COMMONWEALTH v. JAMES L. ORR.

APPEAL BY DEFENDANT FROM THE COURT OF OYER AND TER-
MINER OF ALLEGHENY COUNTY.

Argued October 28, 1890—Decided November 10, 1890.

1. Where the entire charge to a jury is not assigned for error, specifica-
   tions making general complaints of it, as unfair and one-sided, without
   quoting the particular portions alleged to be erroneous, cannot be con-
   sidered: Burke v. Maxwell, 81 Pa. 139, distinguished.
2. It is well settled that it is not error for a judge, in his charge to the
   jury, to express his opinion upon the facts, if done fairly; in some cases
   it may be his duty to do so, provided he does not give a binding direc-
   tion, or interfere with the province of the jury.
3. On the trial of an indictment for rape, where the defendant testified on
   his own behalf, not only was it not improper, but it was the duty of the
   court to call the attention of the jury to the interest of the defendant, as
   affecting the question of his credibility.
4. Nor was it error, after testimony was adduced to establish an alibi, to call
   the attention of the jury to the uncertainty of an effort to recall the exact
   hour or half hour of the occurrence of an event on a certain day, when
   there was nothing to fix it as of that time.

Before PAXSON, C. J.,* STERRETT, GREEN, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 27 October Term 1890; Sup. Ct.; court below, No. 11
September Term 1889, O. and T.

On November 26, 1889, an indictment, based upon the infor-
mation of Miss May Kelly and charging James L. Orr with
rape and adultery, having been returned a true bill, the defend-
ant pleaded not guilty; the district attorney, similiter and issue.

A jury having been empaneled, testimony was given to the
effect that the prosecutrix, about sixteen years of age, was em-
ployed in the office of the defendant, a married man thirty-six
years of age and a real-estate agent; that the offence was com-
mitted about noon on July 25, 1889, the seventh day of the

---

* At the argument, the Chief Justice was overheard to remark to one of
his associates: "With this case, as a judge of this Court I have heard ten
thousand cases argued."

Charge of Court below.

employment; that, on the same afternoon, on the return of another lady employee to the office, she informed the latter of the occurrence, and on going to her home in the evening she informed her mother; that the next day the mother called in a physician who made an examination of the person of the prosecutrix, as to which he testified as a witness. The defendant, as a witness on the stand, denied the commission of the offence, and called witnesses who testified to having seen him upon the street, and at other places, at and about the time it was alleged the offence was committed.

At the close of the testimony, the court, WHITE, P. J., after reviewing the evidence, charged the jury orally, as follows:

The indictment in this case, gentlemen, charges the defendant in the first count with rape, and in the second count with adultery. Rape is the unlawful carnal knowledge of a woman by force and against her will. Adultery is the connection by a married man with some one woman not his wife. Now, on this indictment there may be one of three verdicts. If you believe the defendant not guilty of any crime, the verdict would be "not guilty." If you believe him guilty of the rape, then the verdict would be "guilty as indicted;" and that would cover the rape and adultery, because, being a married man, as admitted, if he had connection with the girl, it was adultery; and if it was done forcibly and against her will, it would be rape. Therefore, if he is guilty of rape, the verdict should be "guilty as indicted." If you believe from the evidence that he did not use force, but had connection with the girl, the verdict then would be "guilty on the second count of the indictment;" that is, adultery. . . . .

A reasonable doubt is a substantial doubt; something that arises out of the evidence in the cause, either because it is insufficient to establish the crime, or because of contradictions in it. A reasonable doubt is where the jury, after a calm and careful consideration of all the evidence, cannot come to a satisfactory conclusion; where their minds are kind of wavering; there, there is a reasonable doubt, and that ought to work in favor of a defendant. But, whatever doubts a jury may have during the trial of a cause, whatever doubts you may have when you go to your room, if, after a careful and full considera-

Charge of Court below.

tion of all the evidence, you settle down into a clear and firm conviction of guilt, that is all the law requires, and there is not, in such a case, a reasonable doubt in the sense of the law. [Jurors have no right to doubt as jurors where they do not doubt as men.] [15] . . . . .

Now, all these are corroborative facts of the testimony of the girl. If you believe the mother and Miss Gannon, when the girl left that morning she was well, in good condition, nothing wrong with her, her clothes clean; when she returned home in the evening, she had evidences of violence to her person, or at least of connection with a man. [The doctor's testimony, I presume, is conclusive evidence, or, if not conclusive, almost conclusive, that very recently something of this kind had taken place with that girl. Now, gentlemen, it is well enough first to consider, was there any violence committed on that girl that day?] [7] Or, had she during that day connection with a man? I speak of that latter part without regard to force. Had she that day connection with some man? There is nothing to contradict the testimony of the girl, or Miss Gannon, or the mother, or the doctor; all of which goes to show that during that day this girl had connection with a man; [and I presume, gentlemen, from the evidence, you will hardly doubt that she had connection with a man that day. Now, who was it? Was there any evidence before the jury pointing to any other person than the defendant as the man with whom she had connection?] [8] There was no evidence of any other young man or married man, or any man, being in the room there with this girl, May Kelly. No evidence that she was outside of that room during that day; and, according to the evidence of May Kelly, and also May Gannon, this must have occurred between 11 o'clock and 2 o'clock on that day. Was there any evidence of her being with any young man or any man during that time, or being out of the office, or any person being in there? I call attention to this, gentlemen, because the evidence is for you, and you are to decide the case upon the evidence. You are the judges of the evidence. You will not take it from me, but you are to decide the case upon the evidence. [It will not do to go to work and imagine evidence upon which you are to decide the case. Was there any evidence of any man being in this office with this girl, or of her being out of that office during that entire time?] [9] . . . . .

Charge of Court below.

[Now, in the first place, what interest has the prosecutor in making this complaint? It is not a trumped up thing long afterwards. The complaint is made that day, and sworn to the next. Why should she trump up a story of this kind? What interest has she? She gains nothing by the prosecution, but only makes her name come before the public in connection with this proceeding. The defendant is a competent witness, and I believe in the law that permits a defendant to testify, because often a defendant may be able to explain facts and circumstances in a case that no other witness could; and where the defendant explains facts and circumstances, his testimony is entitled to far more consideration than where he simply denies the testimony on the part of the prosecution. A mere denial amounts to very little unless supported by other evidence, because the law presumes he is not guilty, and the plea of "not guilty" puts the commonwealth upon evidence. The jury should always consider the testimony of a defendant. They are not justified in disregarding it. They should consider it, and consider it in the light of the great interest the defendant has in the cause, and the temptation to falsify or conceal the truth, and the greater the interest, the greater the temptation. A jury should also closely scrutinize the manner of the witness's testimony, the manner of giving the testimony, and the manner on the witness stand, not only of the defendant, but of the other witnesses. Where a defendant, for example, is very full and elaborate on matters not essential in the case and simply denies briefly the main thing, it is a matter for the consideration of the jury.] [10]

Now, gentlemen, which of these two parties, apart from all other evidence, would you say tells the truth? Which would you believe of the two, suppose there was no other evidence? The testimony of the little girl, May Kelly, is either true, or she has made up that story wholly without any facts to support it; I mean, taking the testimony of the defendant that he had not anything to do with her. [Suppose she had wanted to make up a story against the defendant, manufacture one, would she have told the story she did here? The ear marks of truth are sometimes those things that do not seem to be essential to a tale, and that seem rather to be inconsistent with it. Often we determine the truth of testimony because of matters of that

Charge of Court below.

kind. Sometimes it may seem to be a little improbable, and yet that is an ear mark of truth. Suppose that the little girl had made up the story and intended to put up a job of this kind on Mr. Orr; would she have concocted and told the story she tells us? Suppose she had said (and I merely suggest this by way of illustrating what I mean) that he called her into the back room, locked the door, then seized her, threw her down on the floor, put his hand over her mouth, and violated her person while she was on the floor. That would have been a very simple story, and could not have been easily contradicted, yet she tells a totally different story,—tells what Mr. Marshall, counsel for the defendant, regards as an almost improbable thing,—that she was leaning up against the table, and as to what occurred afterwards. Would she have made up such a tale as that, if she had been manufacturing it out of the whole cloth? I merely refer to these things, gentlemen, by way of directing your attention to that, because it is an issue between these two parties, the prosecutor and the defendant.] [11] He utterly denies her whole story that he had anything to do with her, that he used a syringe or anything else, and one of them must be telling what is not true.

[Now, look at the other testimony. There are a number of witnesses that testify to Mr. Orr being out of his office at different times between 11 and 2 o'clock, and May Kelly says that he was not out of his office during that time. According to her testimony, this occurred some place in the neighborhood of 12 o'clock. She said he was not out of the office from the time that Miss Gannon left, a little after 11, until she came back from East Liberty, about 2 o'clock. On that point there are a number of witnesses who testify to facts that probably the jury will be satisfied, that many of them at least tell the truth; I mean, are honest in their testimony. But their testimony relates to the day and the hour of the day. Now, these are points where men are most frequently mistaken, and where testimony is the most unreliable. When you call up three or four, or five or six days past, and try to fix some event as occurring on that day, when there was nothing to fix it at the time, it is very uncertain; and more uncertain is it to try and recollect the exact hour or half hour in the day when you met some person on the street, or when something occurred, with nothing to fix it in your mind at the time.] [12]

Charge of Court below.

[The ladies at the boarding house testify that Mr. Orr ate his dinner there, came in shortly after 12 o'clock, and their attention was not called to it until the following Tuesday. Then, after talking among themselves, they came to the conclusion—and honestly, no doubt; no doubt they are perfectly honest in their testimony—that he came there a few minutes after 12 o'clock on the 25th. Some of the others say they met Mr. Orr on the street. Without trying or meaning to impeach the honesty of any of these witnesses, it is a question for the jury whether there may not be some mistake on their part as to the hour or the day.] [13] So, the little girl, after this occurred, sitting in the front room, may be mistaken as to Mr. Orr,—and I think, no doubt, is mistaken—not leaving the office between 12 and 2 o'clock. I think she is mistaken there, at least mistaken.

[Now, where a witness is contradicted in a matter, it of course goes to the credibility of that witness with the jury. Where the contradiction is on some matter not really essential in the case, it is not so important as where the contradiction is on a very material or essential part of it. Then, also, the jury should remember the condition of this little girl at that time. She may have believed that Mr. Orr was in the back room all the time. He may have gone out and in without her observing him.] [14]

I merely refer to these things, gentlemen, for your consideration. Where you can reconcile the testimony of the witnesses, or where you can explain testimony on the ground that there is some mistake, some misrecollection, jurors ought to do that, rather than believe that witnesses have deliberately committed perjury. . . . .

The jury returned a verdict finding the defendant " guilty as indicted." Judgment was then passed that the defendant pay a fine of six cents, pay the costs, etc., and undergo an imprisonment in the Western Penitentiary for the period of four years and ten months.

On December 18, 1889, an allocatur having been obtained, the defendant was ordered to be discharged from custody upon his entering into a recognizance in the sum of $8,000, with sureties to be approved by the Court of Quarter Sessions, or

Arguments.

by the president judge thereof in vacation, conditioned, etc. Thereupon, the defendant took this appeal, specifying that:

1. " The court erred in directing the minds of the jury to all the inculpating and criminating evidence offered or suggested by the commonwealth, and in omitting all reference to the material facts of the defence.

2. " The court erred in laying too great stress upon the testimony tending to corroborate the prosecutrix, and explaining away the effect of the testimony of the witnesses who corroborated the defendant; and in persistently trying to make it appear to the jury that those witnesses may have been mistaken, or that they deliberately falsified.

3. " The court erred throughout almost the entire charge in magnifying the evidence given on the part of the commonwealth and excusing faults therein, and in constantly criticising the evidence of the defence and endeavoring to explain it away.

4. " The court erred in not presenting the defendant's case in that clear, fair, and impartial manner in which he was entitled to have it presented, and in not adequately presenting the defendant's case to the jury in an unbiased manner.

5. " The court did not give proper force and weight to the defence in contrast to the strongly argumentative manner in which he submitted the case of the commonwealth.

6. " The court erred in depreciating and trying to explain away the testimony of the witnesses for the defence, tending to show that the defendant was absent from the place where the crime was alleged to have been committed, at the time of its commission, and also all evidence contradicting the prosecutrix."

7–15. In the parts of the charge embraced in [ ] 7 to 15

*Mr. John S. Robb* and *Mr. Thos. M. Marshall*, for the appellant.

Counsel cited: Pauli v. Commonwealth, 89 Pa. 432; Burke v. Maxwell, 81 Pa. 139; Wharton on Ev., §§ 3163, 3249; McMeen v. Commonwealth, 114 Pa. 305.

*Mr. W. E. Porter* (with him *Mr. J. E. O'Donnell* and *Mr. R. H. Johnston*, District Attorney), for the commonwealth.

OPINION, MR. CHIEF JUSTICE PAXSON:

In the first six assignments of error complaint is made of the charge of the court. The complaint is general, not specifying particular portions of the charge, but averring generally that the defendant's case was not presented in that clear, fair, and impartial manner in which he was entitled to have it presented; that the minds of the jury were directed to such parts of the testimony as inculpated the defendant, while all reference to the material facts of the defence was omitted, etc. Where it is alleged that the charge as a whole was unfair and one-sided, the better practice is to assign the entire charge as error. In this case we cannot judge of the charge as an entirety, for we cannot well select isolated passages. In Burke v. Maxwell, 81 Pa. 139, all the objectionable passages were quoted in the assignments in totidem verbis. Here the assignments referred to do not quote the language of the charge at all, and if the case depended upon these assignments, we could not consider them. There are numerous other assignments, however, in which the language of the charge is set out, and, as they cover the case pretty fully, we can dispose of it without difficulty.

In view of the magnitude of the case to the defendant we have examined the respective assignments with great care, but we are unable to see anything which we can declare to be error. We find in some instances the expression of a decided opinion upon the facts, but in no case was there an interference with the province of the jury. We have said in repeated instances that it is not error for a judge to express his opinion upon the facts if done fairly; nay, more, that it' may be his duty to do so in some cases, provided he does not give a binding direction, or interfere with the province of the jury. As an illustration of the comments of the learned judge, the seventh and eighth assignments furnish a fair example, where the court said: " The doctor's testimony, I presume, is conclusive evidence, or, if not conclusive, almost conclusive, that very recently something of this kind had taken place with that girl." And again: " And I presume, gentlemen, from the evidence, you will hardly doubt that she had connection with a man that day. Now who was it? Was there any evidence before the jury pointing to any other person than the

defendant as the man with whom she had connection?" All of this was fully justified by the evidence, and, if it bore somewhat hardly upon the defendant, it was his misfortune. It was the weight of the case that pressed heavily upon him, not the charge.

Nor do we find error in those portions of the charge in which he discussed the credibility of the witnesses. It is true, he called the attention of the jury to the interest of the defendant as affecting the question of his credibility. We regard this as perfectly proper; and not only proper, but we think it the duty of the court to do so. The defendant had a vast interest, embracing liberty as well as reputation. While the law now makes him a witness, it leaves his credibility to the jury; and it is but right that their attention should be called to the fact of his interest when they come to weigh the evidence. This is a duty on the part of the court; and it should be performed in every case where the jury have to pass upon the evidence of parties to the suit or of interested witnesses. We would be more disposed to criticise the failure of this duty than its exercise, if done in a fair or impartial manner.

The comments of the court upon the defendant's evidence to establish an alibi were especially complained of, but we do not think with reason. Upon this matter the learned judge said to the jury: "On that point, there are a number of witnesses that testify to facts that probably the jury will be satisfied, that many of them at least tell the truth; I mean are honest in their testimony. But their testimony relates to the day and the hour of the day. Now, these are points where men are most frequently mistaken, and where testimony is the most unreliable. When you call up four or five or six days past, and try to fix some event as occurring on that day, when there was nothing to fix it at the time, it is very uncertain; and more than uncertain is it to try and recollect the exact hour or half hour in the day when you met some person on the street, or when something occurred, with nothing to fix it in your mind at the time." There is nothing objectionable in this. It accords perfectly with all our experience, and was a proper instruction to the jury under such circumstances. It was not error to give the jury something to guide them in weighing this evidence, and the learned judge was entirely

accurate when he told them that fixing the time of a transaction occurring several days before, within an hour, or a half hour, without anything to fix the time, was uncertain.

We do not desire to express an opinion upon the merits of this case further than to say that, after a careful examination of the testimony, we are led to the conclusion that it justified the charge of the court. There is nothing in the case to raise even an inference that the prosecution was brought from an improper motive. The young girl who was the prosecutrix, for anything that appears bore a good character, and made complaint of the outrage on the same day. She was abundantly corroborated in every respect in which corroboration was possible, and, if the jury made a mistake, as was alleged, they have nothing to reproach themselves with in view of the evidence. And, assuming the defendant's guilt, as we must do, he certainly escaped with a very merciful sentence:

> The judgment is affirmed; and it is now ordered that the defendant, James L. Orr, surrender himself forthwith to the custody of the high sheriff of Allegheny county, for confinement in the Western Penitentiary, in obedience to the sentence of the court below.