**Commonwealth *v.* Watts, Appellant.**

Argued December 1, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

*Raymond Pace Alexander,* for appellant.

*Theodore L. Reimel,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 5, 1948:

Combining the several complaints of defendant on turned a verdict of guilty of murder in the first degree with penalty of life imprisonment.

Defendant was charged with the murder of his wife, Ollie Watts. They had been married for ten years but were living apart, he with his mother and she with hers. There were two children of the marriage, a son Ronald, nine years of age at the time of the trial, and a daughter Eunice, aged eight. During the summer of 1946 Ronald was staying with his father and paternal grandmother, and Eunice was spending a week-end there; she was to have been sent back to her mother on Sunday, July 14, but defendant failed to return her as agreed upon. On the afternoon of Monday, July 15, her mother came to fetch her. Defendant went out in the street to meet his wife and told her he would not allow her to come in because of the bad feeling which existed between her and his mother. He then re-entered the house, went upstairs, put on an old coat in the pocket of which was a revolver, and came down and advanced toward the front door as his wife, who had returned, was trying to push it open. He attempted to hold the door shut but she succeeded in gaining an entry. He took out his revolver and fired two shots, the second of which struck her at close range in the chest, causing her death within a few hours. Defendant testified that in putting on his coat he had not noticed that the revolver was in one of the pockets; he said that he fired the first shot into the wall and then, as he retreated from his oncoming wife, he fell back on the stairway and "the gun went off. I didn't aim at her; I wasn't shooting at her." He fled to Camden, on the way over throwing his gun into the river; the following day he surrendered to the police.

According to the Commonwealth's testimony which was that principally of the boy Ronald who was an eye-witness of the occurrence, the shooting was wholly inexcusable, cold-blooded and deliberate. Defendant's testimony, on the other hand, as also that of his mother and a Mrs. Armstead, was to the effect that when his wife approached the house, struggled to enter, and

finally burst in the door, she had in her hand a razor blade with which she lunged at defendant, causing him to back up as far as he could to the stairway, and it was from that point that the shooting took place. However, in statements given to the police the day following the murder, neither defendant * nor his mother had mentioned anything about a razor blade or other weapon, nor did the police find any in the house when they came there immediately after the shooting or upon subsequent visits. Ronald said that his mother had nothing in her hands except a pocketbook,—no weapon of any kind. In his statement defendant did not claim that the shooting was accidental; he said that he "just wanted to scare her".

It is in the questions which the trial judge directed to Mrs. Armstead that defendant finds one of his principal grievances. Mrs. Armstead testified that as she stood at the door of the house she heard him and his wife quarrelling, that later, as the witness was coming down the front steps to the pavement, defendant's wife had a razor blade in her hand, was talking in an extremely obscene fashion, and was making violent threats that she was "going to kill somebody". The witness then saw her knocking and banging at the door trying to open it; Mrs. Armstead walked away and at that time heard two shots fired in the house. The trial judge asked her whether she called for help; she replied that she did not, although, she said, there were other people in the street. The trial judge, apparently astonished at this testimony, pursued his questions as to why, since the witness had heard the quarrel between defendant and his wife and had seen her attempting to enter the house armed with a razor blade after threatening to kill

---

* Detective Carey did testify that before he took the statement defendant told him that "she struck at me with something . . . a weapon of some kind" but, when further questioned, "he could not identify it as to whether it was a knife, a razor, or what it was." In the statement itself defendant said: "I didn't see any weapon."

somebody, she did not shout "murder" or seek otherwise to call attention to the situation. Defendant's counsel thereupon moved for the withdrawal of a juror; the court refused the motion and that is now assigned as error. In our opinion defendant's charge that the court was playing the part of an advocate is not warranted. It is always the right and sometimes the duty of a trial judge to interrogate witnesses, although, of course, questioning from the bench should not show bias or feeling nor be unduly protracted. Here the witness's veracity was extremely doubtful and the trial judge was justified in probing into her story in order to ascertain whether it had in fact any basis of truth; in doing this he did not transcend permissible limits.

All the other assignments of error are based upon the complaint that the trial judge in his charge commented on the evidence in such a manner as to discredit defendant's testimony and that of his witnesses. More particularly it is claimed that he sought to prejudice the jury against the witness Mrs. Armstead, that he lightly brushed aside inconsistencies in the testimony of the young lad Ronald but dwelt at length on the contradictions between the testimony of defendant and his mother on the witness stand and their statements to the police, and that he asked the jury several rhetorical questions which pointedly indicated his skepticism in regard to defendant's version as to how he came to have the gun in his pocket, in regard to his account and that of his mother concerning the manner in which the shooting occurred, and in regard to their claim that the wife was armed with a razor blade and used it to attack defendant. The judge's charge did show clearly that he had no confidence in the story of defendant and his witnesses; he was obviously aiming to put the jury on the alert to scrutinize that story carefully and not to take it lightly at its face value. But the real question is whether he was reasonably justified in assuming that attitude, and, in our opinion, while the charge did bear

heavily upon defendant, this was only because it correctly pointed out the weakness and unreliability of his defense. Of course, a judge, especially in a trial involving the grave offense of murder, must not magnify the evidence on one side and belittle it on the other, but, as was said in *Commonwealth v. Colandro,* 231 Pa. 343, 356, 80 A. 571, 576: ". . . the manner in which the evidence shall be dealt with must of necessity depend upon the circumstances in each case, and to a degree upon the line of arguments pursued by counsel in addressing the jury." It is well settled that it is not error for a judge to express his opinion as to the weight and effect of the evidence or even as to the guilt or innocence of the defendant provided this is done fairly and not intemperately, and provided also he does not give a binding direction or interfere with the province of the jury: *Commonwealth v. Orr,* 138 Pa. 276, 20 A. 866; *Commonwealth v. Nafus,* 303 Pa. 418, 420, 421, 154 A. 485, 486; *Commonwealth v. Jones,* 341 Pa. 541, 551, 19 A. 2d 389, 394; *Commonwealth v. Moyer,* 357 Pa. 181, 187, 188, 53 A. 2d 736, 740. In the present case the court was dealing with an atrocious crime and an apparently fabricated defense, and, under such circumstances, the trial judge was not only within his right but in the exercise of his duty when he presented to the jury for their earnest consideration the doubts which had evidently risen in his own mind as to the truth of defendant's version of the crime. Notwithstanding that he plainly revealed those doubts he told the jury that it was their "province, exclusively, to pass upon the facts" and to "determine what inferences flow naturally and properly" therefrom, that they were not to be swayed by either sympathy or prejudice, and that they were "in no way bound" to accept any of his comments in connection with the testimony. Thus they were made sharply aware of the fact that theirs, and theirs alone, was the responsibility of decision.

Judgment and sentence affirmed.