Commonwealth *v.* Archambault, Appellant.

Argued December 2, 1970, reargued January 11, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John W. Packel,* Assistant Defender, with him *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1972:

Appellant Leonard Archambault, after trial by jury in 1962, was convicted of first degree murder and sentenced to life imprisonment. No appeal was taken from his conviction at that time. However, in 1968 appellant filed a petition pursuant to the Post Conviction Hearing Act,[1] alleging that he had been deprived of his right to appeal, guaranteed by *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814 (1963). His petition was dismissed by the common pleas court, but on appeal this Court ordered that appellant be permitted to file post trial motions as if timely filed if he could establish that his previous failure to prosecute an appeal was motivated by fear of the death penalty. *Commonwealth v. Archambault,* 433 Pa. 336, 250 A. 2d 811 (1969). Such a showing was made, but after argument appellant's motion for a new trial was denied. Appellant appealed directly to this Court, and on March 25, 1971, this Court, by a vote of three to two, affirmed the judgment of sentence. A petition for reargument was timely filed, and was granted on May 28, 1971. The case was then reargued before a full Court.

Appellant contends that the trial court erred in telling the jury during the charge: I think it would be a miscarriage of justice to find this defendant not guilty."[2] We agree with appellant and grant him a

---

[1] Act of January 25, 1966, P. L. (1965) 1580, §§1 et seq., 19 P.S. §§1180-1 et seq. (Supp. 1970).

[2] The trial court also told the jury in the course of the charge: "I say to you, members of the jury—and here is my comment— that I don't think voluntary manslaughter is in this case, and I don't think murder in the second degree is in this case. I think it is a question of murder in the first degree or not guilty, and I say it because all the evidence is that way." By this statement and his "miscarriage of justice" statement, the trial court in effect directed the jury to return a verdict of guilty of first degree murder.

new trial.[3] To the same effect see *Commonwealth v. Motley*, 448 Pa. 110, 289 A. 2d 724 (1972), decided this day.

We believe that when a judge expresses to the jury his opinion that the accused is guilty, he invades the province of the jury and thereby violates the accused's fundamental right to trial by jury, a right that has been guaranteed by the Constitution of this Commonwealth since 1776.[4]

In a criminal case the direction of a verdict of guilty by a trial judge is not allowed.[5] For an accused has a right to trial by jury, and if a trial judge directs the jury to return a verdict of guilty, the accused has had no jury trial at all. Our constitutional system of trial by jury is founded upon the firm conviction that the peace and dignity of our society are best maintained, and the highest degree of criminal justice is achieved, if the power to convict individuals of crimes lies solely with the jury.

Justice BRANDEIS' observations on the question of whether a trial judge may express his opinion on the guilt of an accused, expressed over fifty years ago, still ring true today: *"[I]t is still the rule . . . that the judge*

---

[3] Because we grant appellant a new trial on the basis of his first contention, it is unnecessary for us to consider appellant's additional contentions that the trial court erred in charging the jury that no defense of intoxication was present, and by admitting into evidence certain photos of the deceased.

[4] See Constitution of the Commonwealth of Pennsylvania, Art. I, §9, and accompanying Historical Note in Purdon's, Constitution Articles 1 to 2, at 311-12.

[5] See, e.g., *Commonwealth v. Bonomo*, 396 Pa. 222, 230, 151 A. 2d 441, 445 (1959); *Commonwealth v. Orr*, 138 Pa. 276, 283, 20 Atl. 866 (1890); *Commonwealth v. Bloom*, 88 Pa. Superior Ct. 93, 97-98 (1926); *Commonwealth v. Havrilla*, 38 Pa. Superior Ct. 292, 297-98 (1909); 9 Wigmore, Evidence §2495 (1940); 1 Kessler, The Law of Criminal Procedure in Pennsylvania 136 (1961); 5 Anderson, Wharton's Criminal Law and Procedure 230 (1957); 2 Henry, Criminal Procedure in Pennsylvania 651 (2d ed. Sadler 1937).

*is without power to direct a verdict of guilty although no fact is in dispute. What the judge is forbidden to do directly, he may not do by indirection.* The judge may enlighten the understanding of the jury and thereby inflence their judgment; but he may not use undue influence. He may advise; he may persuade; but he may not command or coerce. He does coerce when without convincing the judgment he overcomes the will by the weight of his authority." [6]

Justice BRANDEIS has not been alone in his observation that a trial judge cannot indirectly effect a directed verdict of guilty. As the United States Court of Appeals for the First Circuit recently noted: "In a criminal case a court may not order the jury to return a verdict of guilty, no matter how overwhelming the evidence of guilt. This principle is so well established that its basis is not normally a matter of discussion. There is, however, a deep undercurrent of reasons. Put simply, the right to be tried by a jury of one's peers finally exacted from the king would be meaningless if the king's judges could call the turn. Bushel's Case, 124 Eng. Rep. 1006 (C.P. 1670). *In the exercise of its functions not only must the jury be free from direct control in its verdict, but it must be free from judicial pressure,* both contemporaneous and subsequent. Commonwealth v. Anthes, 1857, 71 Mass. (5 Gray) 185, 209-10; Rex v. Larkin, [1943] K.B. 174; P. Devlin, Trial by Jury 14, 56, 75-91 (3d impr. with addendum, 1966) ; T. Plucknett, A Concise History of the Common Law 137-38 (5th ed. 1956) ; Howe, Juries as Judges of Criminal Law, 52 Harv. L. Rev. 582 (1939)." [7]

---

[6] *Horning v. District of Columbia,* 254 U.S. 135, 139, 41 S. Ct. 53, 54 (1920) (dissenting opinion) (emphasis added) (citations omitted).

[7] *United States v. Spock,* 416 F. 2d 165, 180-81 (1st Cir. 1969) (footnotes omitted). See *Buchanan v. United States,* 244 F. 2d 916, 920 (6th Cir. 1957).

The now-apparent weakness in some of our previous decisions[8] was the supposition that the trial judge could express his personal opinion on the guilt of the accused, and even tell the jury, as the trial court did here, that: "I think it would be a miscarriage of justice to find this defendant not guilty,"and yet somehow still leave "the ultimate decision to the jury" and not "interfere with its responsibility."[9] This assumption fails to recognize the actualities of the judge-jury relationship.

An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence. As Mr. Justice (later Chief Justice) KEP-HART stated for this Court: "The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box. . . . To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has the tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence."[10] Or, as the United States Supreme Court recognized in *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S. Ct. 402, 405 (1946): " 'The influence of the trial judge on

---

[8] See, e.g., *Commonwealth ex rel. Smith v. Rundle,* 423 Pa. 93, 223 A. 2d 88 (1966) ; *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963) ; *Commonwealth v. Cisneros,* 381 Pa. 447, 113 A. 2d 293 (1955).

[9] *Commonwealth v. Raymond,* 412 Pa. 194, 208, 194 A. 2d 150, 157 (1963).

[10] *Commonwealth v. Myma,* 278 Pa. 505, 508, 123 Atl. 486, 487 (1924).

the jury is necessarily and properly of great weight,'
. . . and jurors are ever watchful of the words that fall
from him. Particularly in a criminal trial, the judge's
last word is apt to be the decisive word."[11]

A judge's expression of his opinion on the guilt of
an accused has an even greater coercive effect on the
jury when as here the judge states that it would be a
"miscarriage of justice" to find the defendant not guil-
ty. "A juror may not mind disagreeing with a judge on
factual matters but he would dislike very much placing
himself in the category of a person who has participated
in a miscarriage of justice, judicially proclaimed." *Com-
monwealth v. Raymond*, 412 Pa. 194, 210, 194 A. 2d 150,
158 (1963) (dissenting opinion).[12]

In light of the decisive effect that a jury is likely
to give to a judge's statement that in his opinion the
accused is guilty, it is clear that cautioning instructions
to the effect that the jury is the final arbiter of the
verdict are insufficient to vitiate the impact of the
judge's statement. In a lengthy charge such as the one
that was given to the jury at appellant's trial, the
judge's statement that "I think it would be a miscar-
riage of justice to find this defendant not guilty" is
the one part of the charge that no juror will forget or
fail to understand. Cautionary instructions will be un-
able to remove the indelible impact of such a statement.

---

[11] For additional observations on the great weight that a jury
attaches to a judge's opinion on the guilt of an accused, see *Com-
monwealth v. Cisneros*, 381 Pa. 447, 460, 113 A. 2d 293, 300 (1955)
(dissenting opinion); *United States v. Smith*, 399 F. 2d 896, 898 (6th
Cir. 1968); see also O'Mara, Standard Jury Charges—Findings of
Pilot Project, 43 Pa. Bar Ass'n Q. 166, 173 (1972).

[12] One former Justice of this Court suggested that a judge's
use of the phrase "miscarriage of justice" indicates to the jury
that "they themselves might have to answer for some species of
misconduct if they acquitted the defendant." *Commonwealth v.
Cisneros*, 381 Pa. 447, 454, 113 A. 2d 293, 297 (1955) (dissenting
opinion).

Cf. *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968) ; *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964).

In holding as we do today, that a trial judge may not suggest a verdict of guilty or not guilty nor directly express an opinion on the guilt or innocence of the defendant, we are merely reaching a result which is in harmony with our latest decisions in this general area— *Commonwealth v. Wilmer*, 434 Pa. 397, 254 A. 2d 24 (1969), and *Commonwealth v. Holton*, 432 Pa. 11, 247 A. 2d 228 (1968). In both of these cases the trial judge in his charge had reminded the jurors of their responsibility to the Almighty to bring in a proper verdict. We reversed on the grounds that the " 'jurors *might* have concluded . . . that the Court was threatening them with the wrath of God should they bring in a verdict of not guilty.' " *Commonwealth v. Wilmer*, supra, 434 Pa. at 400, 254 A. 2d at 25 (quoting from *Commonwealth v. Holton*, supra, 432 Pa. at 19, 247 A. 2d at 232). Certainly a direct statement by a judge that in his opinion the accused is guilty invades the province of the jury just as much as, if not more than, a judge's statement implying that he can discern the will of the Almighty and that God's wrath will be visited upon the jury if they fail to return a verdict of guilty.

Our holding in this case also eliminates a number of anomalies that would exist under the opposite rule. For example, we recently held in *Commonwealth v. Potter*, 445 Pa. 284, 285 A. 2d 492 (1971), that a new trial was required when the prosecutor expressed his personal opinion of the defendant's credibility in the presence of the jury. We reasoned that the prosecutor "thereby clearly and improperly intrud[ed] upon the jury's exclusive function of evaluating the credibility of witnesses." Id. at 287, 285 A. 2d at 493.[13] If a prose-

---

[13] The standards set forth in American Bar Association Project on Standards for Criminal Justice, The Prosecution Function (Ap-

cutor cannot express his personal opinion of a defendant's credibility without intruding upon the jury's function, *a fortiori* we cannot permit a judge, whose opinion on the guilt of an accused has a far greater impact on the jury, to express such an opinion on the guilt of an accused.

In addition, we have held many times that new trials would be granted where the judge in a jury case evidenced a prejudiced or biased attitude toward the defendant,[14] or by his conduct acted as an advocate for the Commonwealth.[15] If new trials are required in cases such as these where the judge only indirectly indicated his belief in the guilt of the accused, how can we refuse to grant a new trial where as here the judge directly and specifically expressed his personal opinion that the accused was guilty.[16]

---

proved Draft 1970), §5.8(b), which we relied upon in *Potter*, provide: "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the defendant."

The ABA Code of Professional Responsibility provides: "In appearing in his professional capacity before a tribunal, a lawyer shall not . . . [a]ssert his personal opinion . . . as to the credibility of a witness . . . or as to the guilt or innocence of an accused. . . ." American Bar Association Special Committee on Evaluation of Ethical Standards, Code of Professional Responsibility (Final Draft 1969), DR 7-106(C)(4).

[14] See, e.g., *Commonwealth v. Hales*, 384 Pa. 153, 119 A. 2d 520 (1956); *Commonwealth v. Trunk*, 311 Pa. 555, 565-66, 167 Atl. 333, 337 (1933); see generally Annotation, 34 A.L.R. 3d 1313 (1970).

[15] See, e.g., *Commonwealth v. McCoy*, 401 Pa. 100, 162 A. 2d 636 (1960); *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 Atl. 486, 487 (1924).

[16] Cf. §5.6 of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft 1968). That section provides: "Judicial Comment on Verdict. While it is appropriate for the court to thank jurors at the conclusion of a trial for their public service, such comments should not include praise or criticism of their verdict."

Finally, our result here is in accord with the view of the overwhelming majority of other jurisdictions.[17]

The judgment of sentence is vacated and a new trial is granted.

Mr. Justice NIX joins in the majority opinion and filed a concurring opinion.

Mr. Justice MANDERINO joins in the majority opinion and joins in the concurring opinion of Mr. Justice NIX.

Mr. Justice EAGEN filed a dissenting opinion.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

I am pleased to witness today the demise of a doctrine that I have long believed to have been inconsistent

---

[17] See, e.g., *Robinson v. State*, 161 So. 2d 578 (Fla. D.C. App. 1964); *People v. Chatman*, 67 Ill. App. 2d 481, 214 N.E. 2d 545 (1966); *State v. Cox*, 352 S.W. 2d 665 (Mo. 1961); *People v. Mulvey*, 1 A.D. 2d 541, 151 N.Y.S. 2d 587 (1956); *Tilford v. State*, 437 P. 2d 261 (Okla. Crim. Ct. App. 1968); *Holober v. Commonwealth*, 191 Va. 826, 62 S.E. 2d 816 (1951); *State v. Loveless*, 140 W. Va. 875, 87 S.E. 2d 273 (1955); see generally 23 C.J.S. Criminal Law, §993 (1961); Comment, Power to Comment on the Issue of Guilt: Trial by Jury or Trial by Judge, 9 Vill. L. Rev. 440 (1964).

One jurisdiction has gone so far as to state that if a trial judge does or says anything which might prejudice the jury or be construed by the jury as indicating a belief in defendant's guilt or innocence, a violation of the Canons of Judicial Ethics, Canon 3, has occurred. See *State v. Sanders*, 360 S.W. 2d 722, 726 (Mo. 1962).

In *United States v. Murdock*, 290 U.S. 389, 54 S. Ct. 223 (1933), the United States Supreme Court restricted the power of federal trial judges to express an opinion on the guilt of an accused to "exceptional cases." Id. at 394, 54 S. Ct. at 225. Intermediate federal courts, in interpreting and applying *Murdock*, have generally agreed that an opinion as to the guilt of a defendant is only warranted when the facts are undisputed, and the only issue is whether defendant's conduct constitutes a violation of the statute in question. See, e.g., *United States v. Smith*, 399 F. 2d 896 (6th Cir. 1968); *McBride v. United States*, 314 F. 2d 75 (10th Cir. 1963); *United States v. Woods*, 252 F. 2d 334 (2d Cir. 1958); *Davis v. United States*, 227 F. 2d 568 (10th Cir. 1955); *United States v. Link*, 202 F. 2d 592 (3d Cir. 1953).

with practical realities and manifestly unfair. To have held consistently that a direction of a verdict of guilty by a trial judge in a criminal case was improper and yet condone his expression of opinion as to guilt created an anomaly in our law unsupportable in reason or logic. I, therefore, join in the opinion of the majority which has long been overdue.

I regret, however, that in reaching its result the majority did not find it necessary to strike down those decisions where the statement of the trial judge was offensive even under the former standard. The trial judge in the case at bar as in *Commonwealth ex rel. Smith v. Rundle,* 423 Pa. 93, 223 A. 2d 88 (1966) ; *Commonwealth v. Raymond,* 412 Pa. 194, 194 A. 2d 150 (1963) ; and *Commonwealth v. Cisneros,* 381 Pa. 447, 113 A. 2d 293 (1955), in addition to expressing an opinion as to the guilt of the defendant, went further and suggested that the jury's failure to accept his view would have been a "miscarriage of justice." The former rule, while permitting comment provided "the only restriction being that he must advise the jury that anything he states in that connection is not binding upon them but that it is their sole power and responsibility to determine the guilt or innocence of the defendant, and in cases of murder the degree of the guilt. . . ." *Commonwealth v. Simmons,* 361 Pa. 391, 407, 65 A. 2d 353, 361 (1949). It was clearly a requirement that the expression of opinion should be done fairly and temperately and at no time should the ultimate decision be removed expressly or implicitly from the province of the jury.

We agree with the observations of the late Justice Musmanno in his dissenting opinion in *Commonwealth v. Raymond*: "But this rule, even as stated by the Majority, carries within it a very important modification; namely, that the judge must express his opinion *'fairly*

*and temperately'.* The judge there did not express himself 'fairly and temperately'. Metamorphically he held a whip over the heads of the jury. He told them that if they did not agree with him, their contrary view would amount to a 'miscarriage of justice'. This kind of language, it seems to me, smacks of coercion. A juror may not mind disagreeing with a judge on factual matters but he would dislike very much placing himself in the category of a person who has participated in a miscarriage of justice, judicially proclaimed." 412 Pa. 194, 210, 194 A. 2d 150, 158 (1963). This was not an expression of an opinion but rather an indictment of any who would dare to differ.

By abandoning the former rule the majority will avoid many future injustices. However, by failing to reach and overrule *Commonwealth ex rel. Smith v. Rundle, supra; Commonwealth v. Raymond, supra;* and *Commonwealth v. Cisneros, supra,* they perpetuate the former inequities permitted allegedly within the ambit of that doctrine. With this I cannot agree.

Mr. Justice MANDERINO joins.

———

DISSENTING OPINION BY MR. JUSTICE EAGEN:

On March 25, 1971, a majority of this Court who originally heard the appeal, speaking through former Mr. Chief Justice BELL, affirmed the judgment of sentence. Although reargument was subsequently granted, nothing advanced during the second round has persuaded me that our original order of affirmance was erroneous. Hence, I would still affirm the judgment for the persuasive reasons articulated in the opinion of our former Chief Justice.

I take the privilege of setting forth the opinion of former Chief Justice BELL in pertinent part:

"On August 10, 1962, Edward Bleecher, a blind man who was a night manager of a hotel in Philadelphia,

was badly beaten and then strangled to death by defendant-appellant, Leonard Archambault, in the victim's room, in the early hours of the morning. Archambault orally confessed, and later signed a lengthy written confession at the end thereof, and also on every page. He signed his written confession after having been duly warned of his rights and after having stated therein that his confession was absolutely free and voluntary and was given without any force, fears, threats or promises or inducements of any kind. In his confessions, Archambault admitted that he went to the hotel keeper's room *in order to rob him,* and that after he left the blind man's room, he found $45 in his pocket which he could not account for. Moreover, a witness for the Commonwealth testified that, shortly before this robbery-murder, Archambault asked him to join him in robbing the hotel keeper.

"In his confessions, Archambault said that earlier that evening he had committed sexual intercourse with another man. Archambault further stated (in both his oral and written confessions) that when he thereafter went to the victim's hotel room in order to rob him, the victim asked Archambault to have sexual relations with him, and this infuriated Archambault so much that, after striking Bleecher, he strangled him to death.

"On December 6, 1962, a jury found Archambault (who had not taken the witness stand) guilty of murder in the first degree, and fixed the punishment at life imprisonment. At his trial, Archambault was represented by two experienced court-appointed attorneys. No post trial motions were filed on his behalf, nor was any appeal taken from the judgment of sentence.

"On January 25, 1968, Archambault filed a petition for post-conviction hearing relief, alleging that he had not knowingly and intelligently waived his right to a direct appeal. After a hearing, his petition was dis-

missed, whereupon he took an appeal to this Court. In Commonwealth v. Archambault, 433 Pa. 336, 250 A. 2d 811, we remanded the case to the Court below for a hearing on whether Archambault's failure to take an appeal was due to his lawyers' advice, or to his fear of receiving the death penalty at a second trial. The Court of Common Pleas (Trial Division) denied his petition for relief, as well as his motion for a new trial. However, that Court granted him the right to file a direct appeal.

"Archambault's principal contention is that the charge of the trial judge constituted reversible error because the Judge expressed therein his opinion as to appellant's guilt. He urges us to overrule our prior decisions and abandon our long-established rule in this Commonwealth that a trial Judge may express an opinion as to the guilt or innocence of a defendant, if he leaves solely to the jury the determination of innocence or guilt and the crime, if any, of which the defendant is guilty. This we decline to do. More particularly, the portions of the charge which, he contends constitute such prejudicial error as to require a reversal of the jury's verdict, and the grant of a new trial, are as follows:

" 'They are the three crimes. I say to you, members of the jury—and here is my comment—that *I don't think voluntary manslaughter is in this case, and I don't think murder in the second degree is in this case. I think it is a question of murder in the first degree or not guilty, and I say it because all the evidence is that way**. . . . I make comment again, *but that comment can be totally disregarded by you, because it is entirely for you.* I think it would be a miscarriage of justice to find this defendant not guilty.'

---

"* Italics throughout ours, unless otherwise noted."

"The real issue before us boils down to this: did the trial Judge's comments on Archambault's guilt and his possible crimes improperly and unfairly impair the absolute right of a jury to determine his innocence or guilt as well as the crimes, if any, of which he was guilty?

"This Court has held many times that in reviewing a charge for prejudicial and reversible error, we must consider the charge as a whole. Commonwealth v. Butler, 442 Pa. 30, 272 A. 2d 916; Commonwealth v. Whiting, 409 Pa. 492, 187 A. 2d 563; Commonwealth v. Lance, 381 Pa. 293, 113 A. 2d 290. In Commonwealth v. Butler, 442 Pa., supra, this Court pertinently said (page 34) : ' "It is elementary that the instructions to a jury must be read as a whole and correctness and adequacy thereof determined from that reading: Commonwealth v. Thompson, 321 Pa. 327, 184 Atl. 97 (1936) ; Commonwealth v. Gibbs, 366 Pa. 182, 76 A. 2d 608 (1950)." ' In Commonwealth v. Lance, 381 Pa., supra, the Court expressed the same principle in slightly different language (page 298) : 'The charge must be considered in its entirety and error cannot be predicated on certain isolated excerpts from it (Commonwealth v. Moyer, 357 Pa. 181, 187, 53 A. 2d 736) ; which is what defendant attempts to do in contending that the court disparged his evidence. . . .'

"When we examine the Court's charge in its entirety, we find that the defendant-appellant was not unfairly or unjustly prejudiced. The above-quoted excerpts from the Court's charge were covered and explained by the Judge's repeated instructions to the jury that *it and it alone was to determine the ultimate innocence or guilt of the defendant.* For example, the Court charged: *'. . . And you are the complete, final, unequivocal arbiter of the verdict, no matter what I say.*

" 'I am going to make a comment, *but in the last analysis you, and only you, have the ultimate, final and*

*unequivocal responsibility to decide this case* and to return one, and only one, of these four possible verdicts. Do you understand that? . . . Under that "murder", you can find one of these three verdicts: murder in the first degree, murder in the second degree or voluntary manslaughter. *I will tell you what I think, but you are not bound by what I think, no matter what I say, except as to the law.*

" 'I will make a comment when I get, later on in my direction to you, or my charge to you, as to what I think, *but what I think is not at all binding on you, and please remember that, because I say again, unequivocally, the final determination of this case is completely in the hands of the jury,* entirely with you. . . . Nevertheless, members of the jury, *please understand me—and I am pointing my finger at you so you will understand the emphasis of what I am saying—it is entirely, completely, in your power to find any verdict.*

" 'We always hope that a jury will exercise intelligence and use its power wisely and intelligently, but in this case, I cannot take away from you the power to return a verdict of murder in the second degree if you so decide unanimously, or a verdict of voluntary manslaughter if you so decide. . . . *But please remember, I am giving you my thought, but it is entirely, completely, for you to say what the verdict shall be, and it shall be one of those four possible verdicts. . . But it is entirely, completely, for you. If you think it differently, it is your thought that controls,* and it will be for you to say which one of these four possible verdicts you will bring in after you have deliberated and unanimously decided on what verdicts to bring in. . . . But, members of the jury, on that, too, *I say again, with emphasis, it is entirely, completely, for you and I can't and nobody else can stop you or prevent you, if you so unanimously decide, from bring in a verdict of murder in the second*

*degree. . . .* The Commonwealth asserts, and whether the assertion is so or not *is entirely for you,* for you and only you can decide what the evidence is. . . . But if you find those to be the facts beyond a reasonable doubt, then you would be warranted in finding this defendant guilty of murder in the first degree, because if you find those to be the facts you find an agreement to rob, going in, robbing, pockets turned out, money taken, a radio taken, and a death, bruises, and a strangulated throat with a towel around the throat.

" '*But whether that is so is entirely, completely, and finally for you.* Then, members of the jury, you have a right, if you so unanimously decide for any reason, or if your reasons establish themselves from the evidence, to find this defendant not guilty. *This is entirely for you. . . . But again I say emphatically that it is entirely, completely, finally, unequivocally for you, because yours is the power* of a full, honest, impartial, intelligent consideration of the case *to say what the verdict shall be.* And it shall be one of these four verdicts, and that sheet will go out with you.'

"In the light of the repeated and crystal clear statements in the Court's charge, we are convinced that the jury was not coerced or unfairly and improperly influenced to bring in a verdict of guilty of murder in the first degree.

"Furthermore, we note that appellant's experienced trial counsel made no objection, at the time of the trial to the Court's comments and instructions to the jury of which he now complains.

"In Commonwealth v. Chambers, 367 Pa. 159, 79 A. 2d 201, this Court said (page 164) : 'It is the exclusive province of the jury, not the court, to decide all the facts, the inferences therefrom, the credibility of the witnesses and the weight and effect to be given to all of the testimony. While the main purpose of a judge is to

state and explain the law and briefly review the evidence, *it is always the privilege and sometimes the duty of a trial judge to express his own opinion, including his opinion of the weight and effect* of the evidence or its points of strength and weakness or even the *guilt or innocence of the defendant and the verdict, which in his judgment, the jury should render, provided* (1) there is reasonable ground for any statement he may make; and (2) he clearly leaves to the jury the right to decide all the facts and every question involved in the case, regardless of any opinion of the court thereon: Commonwealth v. Cunningham, 232 Pa. 609, 611, 81 A. 711; Commonwealth v. Foster, 364 Pa. 288, 293, 72 A. 2d 279; Commonwealth v. Simmons, 361 Pa. 391, 407, 65 A. 2d 353; Commonwealth v. Watts, 358 Pa. 92, 97, 56 A. 2d 81; Commonwealth v. Jones, 341 Pa. 541, 551, 19 A. 2d 389; Commonwealth v. Nafus, 303 Pa. 418, 420-1, 154 A. 485.'

"More recently in Commonwealth ex rel. Smith v. Rundle, 423 Pa. 93, 223 A. 2d 88, the appellant complained of the trial Court's comment that a not guilty verdict would be a 'miscarriage of justice'. We rejected this contention, and said (page 97): 'In view of this record, particularly Smith's own trial testimony, we find no merit in the argument that the trial judge's comment, that a not guilty verdict would be a miscarriage of justice, was unwarranted or unfair. This is especially so, since it also appears that the jury received careful instructions that the determination of all factual questions was solely for its decision, and that a not guilty verdict could be returned.' This same language, i.e., 'miscarriage of justice'* was specifically used

"* In view of the numerous complaints about this language, and in the interest of avoiding the possibility that such strong language might unfairly prejudice a jury, the Court believes that this phrase should not hereafter be used by a trial Judge in his comments or charge to the jury."

by a trial Judge and approved by this Court in Commonwealth v. Cisneros, 381 Pa. 447, 113 A. 2d 293; Commonwealth v. Raymond, 412 Pa. 194, 194 A. 2d 150.

"In reviewing the record in this case, particularly Archambault's confessions, we find no prejudicial or reversible error in the trial Judge's charge.

"The cases relied upon by appellant are clearly distinguishable. In *Commonwealth v. Ott*, 417 Pa. 269, 207 A. 2d 874, this Court granted a new trial because the Judge stated in his charge that he *had a duty* without any qualification to comment on guilt. The Court held that the use of these words may result in the jury's concluding that a guilty verdict is the only choice they have. However, the Court said (pages 272-273) :

" 'In connection with the right of the trial judge to express an opinion on the weight and effect of the evidence, this Court said in Commonwealth v. Cunningham, supra, 232 Pa. 611, 81 A. at 712: "It is the undoubted right of a judge, and often it is his duty, to express to the jury his opinion of the weight and effect of the evidence."

" 'For the first time, as far as our research discloses, in Commonwealth v. Nafus, 303 Pa. 418, 154 A. 485 (1931), this Court held that a trial judge may also express an opinion as to the guilt or innocence of the defendant. And in many cases since, this right has been reaffirmed provided (1) that it is exercised fairly and temperately; (2) that there is reasonable ground for any statement the judge may make; and (3) that he clearly leaves to the jury the right to decide all the facts and every question in the case, regardless of his opinion: Commonwealth v. Raymond, 412 Pa. 194, 194 A. 2d 150 (1963) ; Commonwealth v. Chester, 410 Pa. 45, 188 A. 2d 323 (1963) ; Commonwealth v. Patskin, 372 Pa. 402, 93 A. 2d 704 (1953) ; and Commonwealth v. Watts, 358 Pa. 92, 56 A. 2d 81 (1948).

" 'In connection with the right of the trial judge to express an opinion as to the guilt or innocence of the accused, it was said in Commonwealth v. Nafus, supra, 303 Pa., at 420, 154 A. at 486, "that it was *sometimes*\* his duty to do so." In Commonwealth v. Moyer, 357 Pa. 181, 53 A. 2d 736 (1947), it was held that "in some cases" it may be his duty to express such an opinion. Likewise, in Commonwealth v. Chambers, supra, 367 Pa. at 164, 79 A. 2d 204, we said ". . . it is always the privilege and *sometimes the duty*\* of a trial judge to express his own opinion, including his opinion of the weight and effect of the evidence or its points of strength and weakness or even the guilt or innocence of the defendant and the verdict which, in his judgment, the jury should render. . . ." See also, Commonwealth v. Patskin, supra. However, in no case within our knowledge has it been said that it is *always*\* the duty of the court to do so, and clearly no language of this Court has ever indicated that a judge should feel compelled to do so in every case, regardless of the nature, quality or quantity of the proof.'

"In Commonwealth v. Young, 418 Pa. 359, 211 A. 2d 440, we reversed and granted a new trial because of the following language in the Court's charge: ' "My comment . . . *and I have a good reason for making it.*\*\* . . ." ' This Court held that a jury could conclude that a trial Judge was in possession of facts, not disclosed by the evidence, that proved the guilt of the defendant. In Commonwealth v. Holton, 432 Pa. 11, 247 A. 2d 228, and Commonwealth v. Wilmer, 434 Pa. 397, 254 A. 2d 24, the Judge stated to the jury its responsibility to God in determining the guilt or innocence of the defendant. We granted a new trial because we believed that the jury could have concluded that the Judge was threaten-

---

"\* Italics in *Commonwealth v. Ott.*"
"\*\* Italics in *Commonwealth v. Young.*"

ing them with the wrath of God should they bring in a verdict of not guilty.

"From the experience of several centuries the law permits, under certain circumstances, a trial Judge to comment on a witness's testimony or on any part of the evidence and to express his view and opinion of the evidence and of the alleged crimes and defenses, provided he expresses his opinion fairly and temperately and that there is reasonable ground for any statement he may make, and, most importantly, that he clearly leaves to the jury the right to decide all the facts and every question in the case regardless of his opinion. The reason and justification for this (although rarely ever expressed) is that a Judge's knowledge and experience and analysis may at times, aid the jury in reaching a just verdict."