368 A.2d 265
**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**James LONG, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided Jan. 28, 1977.

Louis J. Grippo, Andrew M. Schifino, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Louis R. Paulick, Asst. Dist. Attys., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

Appellant, James Long, was arrested and indicted in Allegheny County for murder, voluntary manslaughter, and involuntary manslaughter. These charges stemmed from the killing of Dorothy Lovrencevic, who was found dead in the bedroom of her home at approximately 3:45 p. m., on September 14, 1973. At trial, counsel agreed that the involuntary manslaughter indictment would be withdrawn from the jury and the charge would be limited to murder in the first degree, murder in the second degree, and voluntary manslaughter. The jury was so charged and returned a verdict of guilty of voluntary manslaughter. Post-verdict motions were denied and appellant was sentenced to five to ten years imprisonment. This appeal followed.

Appellant contends that the evidence was insufficient to sustain a verdict of voluntary manslaughter since

guilt was not established beyond a reasonable doubt. We agree and reverse the judgment of sentence.

The prosecution's theory of the crime was that the appellant, rather than going to school on the morning of Friday, September 14, 1973, went to the home of the victim, engaged in sexual activity, and then strangled her. Since all of the evidence produced by the prosecution to support its theory was circumstantial and the issue before us is the sufficiency of that circumstantial evidence, we note initially what we have said about circumstantial evidence in the past. In *Commonwealth v. Simpson,* 436 Pa. 459, 260 A.2d 751 (1970) we said:

"It is true that circumstantial evidence, in itself, may be sufficient to establish the commission of a crime and the accused's connection therewith. *Commonwealth v. Finnie,* 415 Pa. 166, 202 A.2d 85 (1964). It is equally true that in evaluating the sufficiency of the evidence after a guilty verdict, all of the evidence, be it direct or circumstantial, must be read in a light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising therefrom. *Commonwealth v. Burns,* 409 Pa. 619, 187 A.2d 552 (1963). But before a conviction will be sustained, 'the facts and circumstances proved must be of such a character as to establish guilt beyond a reasonable doubt.' *Commonwealth v. Garrett,* 423 Pa. 8, 12, 222 A.2d 902, 905 (1966). And, where a conviction is based entirely on circumstantial evidence, 'the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all.' *Commonwealth v. Clinton,* 391 Pa. 212, 218, 137 A.2d 463, 466 (1958). If the conviction is based wholly on inferences, suspicion and conjecture, it cannot stand. *Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968); *Commonwealth v. Garrett,* supra; *Commonwealth v. Deyell,* 399 Pa. 563,

160 A.2d 448 (1960) ; and, *Commonwealth v. Clinton,* supra."

Viewing the evidence in the light most favorable to the prosecution the following account of the facts surrounding the homicide was developed at trial. At approximately 7:15 a. m., September 14, 1973, appellant, a student at Richland High School, boarded a school bus in front of his home. At that time he was wearing a black hat and carrying a pair of tennis shoes. Appellant got off the bus a few minutes later before it reached the high school and met a fellow classmate with whom he talked and walked until about 9:00 a. m., when they went separate ways. The point at which the two classmates separated was four-tenths of a mile from the victim's home. A muddy footprint was found on the stoop of the victim's home. A photograph of the footprint showed that the print was similar in shape to that made by a pair of boots belonging to appellant. No evidence was presented as to when the print was made and the prosecution's expert admitted that he had no idea at all when the print was placed on the stoop. Furthermore, the print had no individual characteristics and there was no testimony that the print was made by appellant's boot.

Two witnesses saw someone of appellant's general description a few miles from the victim's home on the day in question. One witness testified that she saw an abandoned car, which she identified as the victim's car, at approximately 10:30 a. m., on September 14, 1973, and that she saw a person leaning into the passenger's side of the car. She testified that she did not see this person's face but that the person she saw was wearing a pastel-colored top and dark trousers. Another witness testified that she passed that same car at approximately 1:15 p. m., on the same day, and that she saw a person standing at the driver's side of the car, wearing dark clothing from the waist up and a dark hat. She also testified that she could not see the face of the person leaning against the

car. Finally, one of the appellant's classmates testified that she saw appellant one-half mile from the victim's abandoned vehicle at 1:30 p. m., on the same day, and that he was wearing an Army green shirt. There was also other evidence placing appellant in the general vicinity of the abandoned vehicle. Certain plastic pellets found on appellant's boots were similar to the plastic pellets on the ground near the abandoned vehicle. These pellets had spilled from a derailed railroad car about eighteen months prior to the day of the homicide. No evidence was presented as to when the pellets were picked up by appellant's boots.

Head and pubic hair found in the victim's bedroom and abandoned car were morphologically consistent with appellant's hair types. Pubic hair taken from appellant and hair found at the scene of the crime both contained a crab lice infestation. The prosecution's expert witness testified, however, that despite the morphological consistency of the hair and the lice infestation that he was unable to identify the source of any of the hair submitted to him. In fact, he stated that the head hairs found in the victim's bedroom were also morphologically consistent with those of the victim's six year old daughter. Testimony relating to the hair found in appellant's undershorts was to the same effect: the samples were morphologically consistent with the victim's but the expert could not definitely identify the source of the hair.

Fibers found on certain items of appellant's clothing were consistent with fibers taken from the pair of slacks the victim was wearing at the time her body was found. Again, however, the prosecution's expert witness could not testify with any certainty that the fibers found on appellant's clothes were fibers from the victim's slacks. No proof was offered as to when the appellant wore the clothes in question, or as to when the fibers were placed on the clothes. Additionally, the prosecution's fingerprint expert testified that he was unable to find any fin-

gerprints belonging to the appellant at the site of the murder or on the victim's abandoned vehicle.

Finally, one of appellant's friends testified that as he and appellant were returning from a drive-in movie on the night of September 16, 1973, they saw several police cars parked in the driveway of appellant's home. Seeing this, appellant told his friend to drive past the house and let him off a short distance down the road. This testimony was offered by the Commonwealth as tending to show evidence of flight on the part of the appellant. When, however, the appellant was arrested on the following day, September 17, 1973, he was found by the police at his parent's home and had made no attempt to flee the area.

We cannot conclude that these facts were sufficient for the jury to conclude—beyond a reasonable doubt that appellant was guilty of voluntary manslaughter. The Commonwealth presented no evidence—circumstantial or otherwise—that the appellant was in the victim's company on September 14, 1973. The voluminous record of the trial presents not one piece of evidence directly linking appellant to the alleged murder. Testimony relating to hair found at the scene of the crime, in the victim's abandoned car, and on appellant's clothing was completely inconclusive. Furthermore, while the Commonwealth sought to link the print found on the victim's front porch to a print made by appellant's boot, the expert witness testified that soil samples found on the sole of appellant's boots were totally different from samples of soil taken from the ground surrounding the victim's home or surrounding her abandoned car.

Additionally, the prosecution's evidence shows that the victim was alive at 10:10 a. m., on the morning of September 14, at which time she made a phone call to a friend. Testimony also indicates that her abandoned car was first seen at 10:30 a. m., on the same morning some eight or nine miles from her home. The Common-

wealth's contention at trial that appellant went to the victim's home on September 14, engaged in sexual activity with the victim, murdered her, and then took her car and drove it eight or nine miles away where it was later found would put appellant on a remarkable time schedule.

The only clear evidence of appellant's being anywhere near the victim's home or the abandoned car on September 14, 1973 was the testimony of a classmate who stated that she saw appellant about one-half mile from the abandoned car at approximately 1:30 p. m., on the afternoon of September 14—three hours after the abandoned car was first spotted. Presence alone, however, even at the scene of a crime, cannot sustain a verdict of guilt. As we said in *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966):

> "Appellant's presence on the scene, both immediately prior and subsequent to the commission of the crime, was established. This fact, however, in the absence of other evidence, indicative of appellant's participation . . . , did not warrant submission of the case to the jury."

We believe the evidence presented by the prosecution, along with all reasonable inferences that could be drawn from it, was not sufficient to warrant the jury's finding that the appellant was guilty of any of the crimes for which he was indicted. While such testimony may have cast a degree of suspicion on appellant, this Court has stated that "suspicion is never accepted in a court of justice as a substitute for proof." *Commonwealth v. New*, 354 Pa. 188, 198, 47 A.2d 450, 457 (1946). In *New, supra*, we also made the following observation pertinent to this case:

> "Wigmore in his "Principles of Judicial Proof," p. 147, says: 'Opportunity. When an act is done, and a particular person is alleged to have done it, it is obvious

that his physical presence, within a proper range of time and place, forms one step on the way to the belief that he did it. It is true that another person may have done it, but the former is at least within the limited number of persons who could have done it, and thus is fit to become a subject for further investigation.' Facts which make a person a further subject for investigation often fall far short of establishing his guilt."

The Commonwealth simply failed to prove beyond a reasonable doubt that appellant was ever in the victim's presence on September 14, 1973. All that the evidence established was that Mrs. Lovrencevic was killed on September 14, 1973, that unidentified foreign head and pubic hairs were found in the victim's bedroom, that unidentified foreign pubic hairs were found in appellant's undershorts, that unidentified fibers were found on a few pieces of appellant's clothing, that an unidentified footprint was found on the victim's front stoop, and that appellant was seen in the general vicinity of the victim's abandoned car (eight or nine miles from the victim's home) several hours after her death. On the basis of the evidence presented, the jury would have had to guess whether the defendant committed the crime. As we said in *Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970): "Our system recoils at sending a man to prison . . . on a guess."

Judgment of sentence reversed and appellant ordered discharged.