420 A.2d 662

**COMMONWEALTH of Pennsylvania**

**v.**

**Anthony WHITING, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 31, 1977.

Filed June 20, 1980.

520

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal–Trial Division, of Philadelphia County, by the defendant–appellant, Anthony Whiting, after conviction by a jury of rape, burglary, robbery and other offenses on November 17, 1973. The defendant failed to appear for his hearing on post–trial motions which was set for May 30, 1974 and skipped bail. He was apprehended three (3) years later and his post–trial motions were heard on December 12, 1976, after which he was sentenced to a prison term of five (5) to ten (10) years. Defendant now appeals the denial of his post–trial motions.

■ The sentencing of the defendant was proper. The delay of three (3) years between defendant's conviction and sentencing was due to defendant's own act of skipping bail. Although arrested and tried and convicted of other charges during this three (3) year period he had used an assumed name. Defendant's own act of skipping bail and using an assumed name was responsible for the delay, his sentence was within statutory limits, and the trial court, in imposing sentence, considered only the defendant's character the severity of his crimes for which he had been convicted on November 17, 1973, in imposing sentence. His sentence was, therefore, proper in all respects.

■ The evidence produced at trial revealed that defendant raped one Ida Williams and robbed her apartment on June 14, 1973 at about 2:30 P.M. She clearly identified defendant as the culprit, had a good view of him during the

rape, and was certain that he was a person she had seen in her apartment building at least four (4) to five (5) times previously. A review of her testimony reveals that it was clearly sufficient to support the verdict.

■ The defendant claims that the court erred when it permitted the victim's daughter, one Vandora Mitchell, to testify as to certain details about the crime told to her by her mother immediately after the crimes had occurred. The victim described the defendant as "the boy who lives across the hall". The lower court held that such testimony is admissible to show the "prompt complaint" of the rape a short time after the crime had occurred. Whether or not the court was correct in its reasons for holding the testimony admissible for that reason it is clear that such testimony on the part of the daughter was admissible as a "spontaneous declaration by a person whose mind has been suddenly subject to an overpowering emotion caused by some unexpected and shocking occurrence" in which the person was involved and which had occurred so near in time and place to the incident so "to exclude the likelihood of its having emanated in whole or in part from his reflective faculties." *Commonwealth v. Coleman*, 458 Pa. 112, 326 A.2d 387 (1974). In any event the victim was present in court, testified in court herself and was vigorously cross–examined. Therefore, there was no error in permitting the testimony of the victim's daughter as to victim's statements made to her immediately after the incident at the daughter's home which was located about one and one–half (1½) blocks from the victim's apartment.

■ Defendant also claims that a mistrial should have been declared when the arresting officer testified as follows:

"Q. DID HE SAY ANYTHING TO YOU?

"A. I WARNED HIM OF HIS RIGHTS. I TOOK NO STATEMENTS FROM HIM OR NO CONVERSATION AT THAT TIME."

Defendant then moved for a mistrial and claims that this response constituted an impermissible comment as the de-

fendant's right to remain silent. Defendant's counsel objected (at side bar) to any cautionary instructions being given to the jury regarding this matter because he felt that such instructions would merely underscore the matter in the jury's mind. In certain instances curative or cautionary instructions by the trial court to the jury can cure an impermissible reference to the defendant's exercise of his right to remain silent. *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976). Here no specific reference was made to the defendant's exercising of his Fifth Amendment rights, no follow up of the alleged reference was conducted, and the defendant's own attorney waived any right defendant may have had to cautionary instructions. Certainly the remark by the witness was not of such a nature so as to cause the jury to infer that defendant was guilty because he had remained silent. Because this is a situation where a cautionary instruction to the jury would have cured any defect and because the defendant waived any right he had to such instruction, we find that the court below was correct in denying defendant's motion to a mistrial on this basis.

The defendant also claims that the trial court erred when it stated in his charge to the jury that it felt that the victim "testified fairly and truthfully". The court also stated the following:

"Now, don't be misled by the—where obviously two sets of friends and former friends of this defendant that are—whose opinion may or may not be reliable as to where he was. Do not be impressed by the fact that all of the witnesses testified—the alibi witnesses testified that between the hours of—I think four or five witnesses said that on June 14th of this year, that Momma's birthday party, between the hours of noon time and 9:00 P.M., all the people stayed in the house and nobody ever left the house . . . The only impression—you can decide whether that impresses you—but that kind of consistency in my opinion is quite suspect. I don't—I think it's impossible that four people would stay in a house on a summer day, apparently and nobody left the house. I mean, it's that

sort of determined consistency that would in my opinion raise some question as to all of the testimony of the people–that those witnesses have given. But that's for you to determine. You may be impressed by it. It's for you to determine."

■ However, in reviewing a charge for prejudicial and reversible error, we must consider the charge as a whole. *Commonwealth v. Lance*, 381 Pa. 293, 113 A.2d 290 (1955). In that case the court held that: "The charge must be considered in its entirety and error cannot be predicated on certain isolated excerpts from it."

■ A reading of the charge in the instant case as a whole reveals that the above–quoted excerpts from it were covered by the court's repeated instructions to the jury that the jury alone was to determine the ultimate guilt or innocence of the defendant and that it was within its province to resolve issues of credibility. Because the charge as a whole made it clear to the jury that it was the ultimate finder of fact and because the court did not specifically state that in his opinion the defendant was guilty [as the court did in *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972) where the court stated "I think it would be a miscarriage of justice to find this defendant not guilty"], we hold that the charge as a whole was proper and that the isolated excerpts quoted above did not constitute reversible error.

In light of the severity of defendant's crimes, as well as his character, we find that the court below did not err when it sentenced the defendant as it did.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

JACOBS, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I believe we should vacate the judgment of sentence and remand for a new trial.

In his charge to the jury, the trial judge stated:

In deciding which conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on each side. You may find that the testimony of a few witnesses–just one witness–is more believable than the opposing testimony of a greater number of witnesses.

On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence. You should evaluate the testimony of Ida Williams with special care, in view of Ida Williams' emotional involvement and the difficulty of determining the truth with respect to the crime charged, which is one that is usually carried out in private.

You can determine for yourselves what her appearance was. I cannot influence you. *I can say that I thought she was a very direct witness who stood up extremely well under circumstances that must have been extremely distressing and painful to her.*

Now, before you find the defendant guilty of the crime charged in this case, you must be convinced beyond a reasonable doubt that the act charged did, in fact, occur and it occurred without Ida Williams consent.

One of the factors to be considered in a case of this kind is as to whether a complaint was promptly made to the police. *I would say, from the facts as I have heard them, Ida Williams proceeded with all commendable and due haste to immediately go to her daughter for assistance and immediately report what had occurred to her, immediately* to the police. . . .

. . . Ida Williams testified that she did not see any particular mark or scars on the defendant. One of the witnesses for the defense stated that at the time of the line–up there was blood coming out of the corner of the mouth of the defendant at the time and that somehow the inference would be that because blood was coming out of his mouth that an inference that you may draw–that is entirely up to you–that that somehow identified him as the person and it was upon that that Ida Williams made her identification.

*Now, in my opinion, that is just not consistent. She said she did not see any scars or any identification on him at all at the line–up or any other time.* But that's for you to determine. . . .

After you have considered everything, what it all comes down to is to use your common sense as to what did happen in this housing project and *did this person who, in my opinion, Ida Williams has testified fairly and truthfully*—was this person really–did she make a proper identification of this defendant, who has been charged and is on trial before you. And you have to do that by considering the way all the witnesses in this case impressed you.

*Now, don't be misled by* the–where obviously two sets of friends and former friends of this defendant that are–whose opinion may or may not be reliable as to where he was. *Do not be impressed by the fact that all of the witnesses testified*–the alibi witnesses testified that between the hours of–I think four or five witnesses said that on June 14th of this year, that Momma's birthday party, between the hours of noon time and 9:00 p. m. all the people stayed in the house and nobody ever left the house.

The only impression–you can decide whether that impresses you–*but that kind of consistency, in my opinion, is quite suspect.* I don't–*I think it's impossible that four people would stay in a house on a summer day, apparently, and nobody left the house. I mean, it's that sort of determined consistency that would, in my opinion, raise some question as to all of the testimony of the people–that those witnesses have given.* But that is for you to determine. You may be impressed by it. It's for you to determine.

(N.T. 796–803, emphasis added).

Section 4.7 of the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft, 1968), provides:

(a) The court, at the time it instructs the jury, may summarize and comment on the evidence, provided the jury is clearly and unequivocally instructed that it is the

exclusive judge of the facts, that it is to determine the weight of the evidence and the credibility of witnesses and that it is not bound by the comments of the court.

(b) The summary and comment permitted in subsection (a) is governed by the following principles:

(iv) The court may state the law and comment on matters in evidence bearing on the credibility of any witness, but *may not directly express an opinion that certain testimony is worthy or unworthy of belief.*

(Emphasis added.)

The Commentary to Section 4.7(b)(iv) states:

The standard permits the judge to put to the jury appropriate legal principles on credibility and to point out relevant matters in evidence, such as conflicts in testimony of a witness. But, the judge may not 'intimate that certain testimony is worthy or unworthy of belief.' *United States v. Bookie,* 229 F.2d 130 (7th Cir.1956).

In *Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972), our Supreme Court stated that a trial judge may not express his personal view of a defendant's guilt, for to do so would invade the province of the jury and violate the defendant's right to a trial by jury. In *Commonwealth v. Butler,* 448 Pa. 128, 134–35, 291 A.2d 89, 92 (1972), the Court stated:

Just as a trial judge is not permitted to indicate to the jury his views on the verdict that they should reach in a criminal case ... [citations omitted] similarly, he is not permitted to indicate to a jury his views on whether particular witnesses are telling the truth.

Here, the trial judge's comments went far beyond "comment on matters ... bearing on the credibility of any witness." ABA Standards, *supra.* Instead, the judge's comments made plain to the jury the judge's personal opinion that Ida Williams was a credible witness; that the alibi witnesses were not credible; and that appellant was therefore guilty. The trial judge's statement to the jury that it was "for you to determine" whether the alibi witnesses were credible did not excuse, or cure the effect of, the judge's

expression of his personal opinion of appellant's guilt. The statement was preceded by the most unequivocal admonitions: "Now, don't be misled by .... Do not be impressed by .... it's impossible that ...." As the Supreme Court recognized, in *Commonwealth v. Archambault, supra* :

> An expression by the judge that in his opinion the accused is guilty leaves an indelible imprint on the minds of the jury. The jury is undoubtedly going to attribute to the judge, because of his experience in criminal cases, special expertise in determining guilt or innocence. As Mr. Justice (late Chief Justice) Kephart stated for this Court: "The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality...."
>
> . . . . .
>
> In light of the decisive effect that a jury is likely to give to a judge's statement that in his opinion the accused is guilty, it is clear that cautionary instructions to the effect that the jury is the final arbiter of the verdict are insufficient to vitiate the impact of the judge's statement. 448 Pa. at 95–96, 290 A.2d at 75.

Finally, it cannot be maintained that the trial judge's error was harmless. The respective credibility of Ida Williams and of the alibi witnesses was critical to deciding the case. *Cf. Commonwealth v. Wortham*, 471 Pa. 243, 369 A.2d 1287 (1977). Moreover, despite being told by the judge not to be impressed by the testimony of the alibi witnesses, at least some of the jurors evidently were impressed, for the foreman twice informed the judge that the jury could not reach a verdict. (N.T. 810–811, 814–815) The fact that eventually the jury did reach a verdict makes it especially likely that judge's expression of his personal opinion of appellant's guilt proved decisive.

The judgment of sentence should be vacated and the case remanded for new trial.

HOFFMAN, J., joins in this dissenting opinion.