434 A.2d 142

**COMMONWEALTH of Pennsylvania,**

v.

**James EMMI, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed Aug. 21, 1981.

88

Robert F. Pappano, Assistant Public Defender, Chester, for appellant.

Frank T. Hazel, District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant, James Emmi, takes this appeal from the judgment of sentence rendered by the Court of Common Pleas of Delaware County for the crimes of unauthorized use of an automobile,[1] theft by receiving stolen property[2] and criminal conspiracy.[3] He raises two questions in this appeal: (1) whether the lower court erred in that its charge to the jury constituted a violation of the appellant's constitutional right to a fair and impartial trial; and (2) whether the evidence was sufficient to sustain his conviction for the offense of criminal conspiracy.

The operative facts of the instant case are as follows: In the early morning hours on August 30, 1977, appellant Emmi was observed by a police officer when he disregarded a red light. The officer who witnessed this blatant violation of the Motor Vehicle Code stopped the blue 1966 Pontiac GTO which the appellant was driving. Unknown to the officer,

1. Crimes Code, 18 Pa.C.S. § 3928 (1973).

2. *Id.* at § 3925.

3. *Id.* at § 903.

this vehicle had been reported as stolen only five hours earlier by its rightful owner. Upon being asked for his owner's card, the appellant told the inquiring officer that his name was Emmi and that he could produce the proper identification if he were allowed to enter his nearby residence. Having been mistakenly informed via police radio that the car involved was *not* a stolen one, the officer allowed Mr. Emmi and his three passengers to enter the house. The officer stayed outside of the residence and wrote out appellant's traffic violation citation. At this time, he received another broadcast via police radio that the prior report had been mistaken and that the vehicle in question was, in fact, stolen. He immediately went up to the house which the four people had entered and he proceeded to knock on the door. Upon receiving no response, the officer observed that the lights which previously had been on in the house were now being extinguished. He then impounded the vehicle and initiated procedures to obtain a warrant to arrest appellant Emmi. Pursuant to the warrant which was later issued, Mr. Emmi was taken into custody, but the identities of his three passengers remained unknown.

Appellant was then charged with theft by unlawful taking,[4] unauthorized use of an automobile, theft by receiving stolen property, criminal conspiracy, and disorderly conduct.[5] After appellant was held for court on all charges, his case proceeded to trial before a judge and jury on January 16, 1978. Just prior to closing argument, however, the Commonwealth withdrew the charge of disorderly conduct. The appellant was then found guilty of all the remaining charges except that of theft by unlawful taking on which the jury found him not guilty. After his post-verdict motions were denied, the appellant was sentenced to a term of two to four years incarceration for theft by receiving stolen property and was also ordered to pay costs, a $200 fine, and $275 in restitution to the victim. In addition, he received a suspended sentence on unauthorized use of an automobile as well as

4. *Id.* at § 3921.

5. *Id.* at § 5503.

criminal conspiracy. This appeal from the judgment of sentence was then pursued.

 Appellant's initial contention is that the trial court's summary of the evidence contained in the charge to the jury was biased and prejudicial to him thereby depriving him of his right to a fair and impartial trial by jury. Pa.Const. art. I, § 9. In support of his position, appellant, in his brief, directs our attention to the following passages. One is from *Commonwealth v. Archambault,* 448 Pa. 90, 93, 290 A.2d 72, 73 (1972) (footnote omitted):

> When a Judge expresses to the Jury his opinion that the accused is guilty, he invades the province of the jury and thereby violates the accused's fundamental right to trial by jury, a right that has been guaranteed by the Constitution of this Commonwealth since 1776.

The second passage originally appeared in *Commonwealth v. Myma,* 278 Pa. 505, 508, 123 A. 486, 487 (1924) (quoted in *Commonwealth v. Archambault, supra,* 448 Pa. at 95, 290 A.2d at 75):

> The Judge occupies an exalted and dignified position; he is the one person to whom the jury with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box. . . . . To depart from the clear line of duty through questions, expressions or conduct contravenes the orderly administration of justice. It has the tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence.

In addition, our Supreme Court in *Commonwealth v. Butler,* 448 Pa. 128, 134–35, 291 A.2d 89, 92 (1972) (citations omitted) stated further:

> Just as a trial judge is not permitted to indicate to the jury his views on the verdict that they should reach in a criminal case, . . . similarly, he is not permitted to indicate to a jury his views on whether particular witnesses are telling the truth.

While we emphatically agree with the law expressed in the above-quoted passages, we are far from convinced that these concepts are applicable to the present case. After reviewing the record, we have come to the conclusion that the trial court's summary of the evidence was both fair and accurate.

Despite appellant's contention that the trial judge improperly summarized the facts of this case in a slanted and biased fashion, thereby allegedly causing him prejudice, we fail to comprehend the manner in which appellant's right to a fair trial was purportedly besmirched. The ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (approved Draft, 1963) is quite illuminating in this regard:

4.7 Summary of and comment on evidence.

(a) The court, at the time it instructs the jury, may summarize and comment on the evidence, provided the jury is clearly and unequivocally instructed that it is the exclusive judge of the facts, that it is to determine the weight of the evidence and the credibility of witnesses, and that it is not bound by the comments of the court.

(b) The summary and comment permitted in subsection (a) is governed by the following principles:

(i) The court may analyze the evidence, draw the attention of the jury to important portions of the evidence, and fairly and accurately summarize the contentions of both the prosecution and the defense.

(ii) The court may not suggest a verdict of guilty or not guilty, nor may the court directly express an opinion on the guilt or innocence of the defendant.

(iii) The court may not present any item of evidence as a proven or undisputed fact unless the matter has been affirmatively conceded or is the subject of judicial notice.

(iv) The court may state the law and comment on matters in evidence bearing on the credibility of any witness, but may not directly express an opinion that certain testimony is worthy or unworthy of belief.

*See also Commonwealth v. Whiting,* 278 Pa.Super. 519, 420 A.2d 662 (1980) (Spaeth, J., dissenting).

In the instant case, the trial judge complied fully with these minimum standards:

> As I said, the facts in the case are for you. It is my function to give you the law. It is your function and your function alone to find the facts and apply the law, and arrive at a conclusion which we call the verdict. If at any time I have said anything about the facts, or counsel for either side have said anything about the facts, that does not coincide with your recollection, you will be bound solely by your own recollection.
>
> You are the exclusive judges of all of the facts, not what I have said about them or what either counsel have said about them. You are the judge of the facts. We all try to be accurate when referring to facts, but our recollection may not be in accord with yours, and that is the reason under the law you are the supreme judges of the facts. (N.T. 48–49).

With regard to the issue of credibility, he stated further:

> Now members of the jury, I am going to talk to you about the credibility of witnesses that were called. The credibility of witnesses is entirely for you. Every witness that was called in this case, their credibility is for you. In other words, we instruct you in considering the evidence to separate the false from the true that you are made by law the exclusive judges, not only of the evidence, but also the weight of the evidence and the credibility of every witness that was called. (N.T. 49–50).

Thus, viewing the charge in its entirety as we must do, we conclude that it contained a fair summary of the evidence and an adequate instruction on the law. *Commonwealth v. Kelly,* 245 Pa.Super. 351, 363, 369 A.2d 438, 444 (1976). *See also Commonwealth v. Tolassi,* 489 Pa. 41, 413 A.2d 1003 (1980); *Commonwealth v. Whiting,* 278 Pa.Super. 519, 420 A.2d 662 (1980).

Appellant Emmi also contends that the evidence was not sufficient as a matter of law to prove all of the elements of criminal conspiracy beyond a reasonable doubt. We agree.

It is by now quite well-settled that in order to establish criminal conspiracy, the Commonwealth must prove the existence of a shared criminal intent because the essence of the offense of a conspiracy is an agreement between two or more persons to commit an unlawful act. *See Commonwealth v. Barber*, 275 Pa.Super. 144, 418 A.2d 653 (1980). *See also Commonwealth v. Young*, 280 Pa.Super. 393, 421 A.2d 779 (1980); *Commonwealth v. Lewis*, 276 Pa.Super. 451, 419 A.2d 544 (1980); *Commonwealth v. Tingle*, 275 Pa.Super. 489, 419 A.2d 6 (1980); *Commonwealth v. Kinsey*, 249 Pa.Super. 1, 375 A.2d 727 (1977). *See generally* Crimes Code, 18 Pa.C.S. § 903(a) (1973). As a corollary of that concept, it has been stated that a conviction for the crime of conspiracy requires proof of more than a single participant. *Commonwealth v. Byrd*, 490 Pa. 544, 417 A.2d 173 (1980); *Commonwealth v. Anderson*, 265 Pa.Super. 494, 402 A.2d 546 (1979). Although there need not be an explicit or formal agreement between the several conspirators, *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Reed*, 276 Pa.Super. 467, 419 A.2d 552 (1980); *In Interest of Gonzales*, 266 Pa.Super. 468, 405 A.2d 529 (1979); *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975), it is clear that a mere association between them, *Commonwealth v. Sadusky*, 484 Pa. 388, 399 A.2d 347 (1979), or their mere presence at the scene of the crime, *Commonwealth v. Knox*, 273 Pa.Super. 563, 417 A.2d 1192 (1980); *Commonwealth v. Johnson*, 265 Pa.Super. 418, 402 A.2d 507 (1979), is not enough. Moreover, the fact that a conviction may rest entirely upon circumstantial evidence in no way lessens the Commonwealth's burden of proof beyond a reasonable doubt. *Commonwealth v. Sadusky, supra; Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979).

■ Viewing the evidence adduced at trial in the light most favorable to the Commonwealth as verdict winner below, we nevertheless conclude that all of the requisite elements of criminal conspiracy were not proven beyond a reasonable doubt in the present case. More specifically, the Commonwealth has failed to prove that the three unidentified passengers had the requisite knowledge that appellant Emmi was driving a stolen vehicle.[6] Such knowledge is crucial to the process of inferring that there was a shared intent or conspiratorial agreement between Mr. Emmi and at least one of his unknown passengers. The evidence inferentially proves only that they were passengers in a stolen vehicle and that *after* they entered the house, they knew that the appellant had been driving a stolen car.[7] This proof of knowledge came too late in the time sequence of events to show that there was a conspiratorial agreement to either steal the car, or to use it without permission or authority. Proof of knowledge at that late point in time, coupled with the fact that all of the unidentified passengers accompanied the driver into the house, locked the door, extinguished the lights and did not answer the door after the police officer repeatedly knocked to gain entrance, shows that at the very most the crime of hindering apprehension or prosecution[8] was committed and perhaps even that these three individuals conspired amongst themselves to hinder appellant's apprehension. Thus, the evidence is insufficient to prove beyond a reasonable doubt that appellant was guilty of criminal conspiracy to commit the substantive

6. It should be noted here that a missing witness inference instruction was not given to the jury, nor was one requested by the Commonwealth in the present case.

7. This is the absolute earliest time which the Commonwealth can be said to have proven knowledge on the part of the passengers that criminal activities were afoot. The inference can arise as to their knowledge only *after* they entered the house and embarked upon a course of action designed to avoid the police officer. No reasonable inference of knowledge and, therefore, conspiratorial agreement can properly arise before this time.

8. Crimes Code, 18 Pa.C.S. § 5105.

crimes for which he was charged. Although the circumstances are such that we may suspect that the three unidentified passengers had the requisite knowledge at an earlier point in time, the law is clear that mere suspicion is not enough. "The reasonable inference of guilt must be based on facts and conditions proved; it cannot rest solely on suspicion or surmise." *Commonwealth v. Carey*, 368 Pa. 157, 163, 82 A.2d 240, 242 (1951). *See also Commonwealth v. Dolfi, supra; Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Commonwealth v. Roach*, 260 Pa.Super. 261, 393 A.2d 1253 (1978); *Commonwealth v. Noveroske*, 255 Pa.Super. 97, 386 A.2d 154 (1978). Since the requisite knowledge on the part of the three unidentified passengers was not proven in the case at bar, the Commonwealth has failed to meet its burden of proof as to a conspiratorial agreement, whether it be express or implied, between appellant and at least one of the unidentified passengers. The evidence was, therefore, insufficient as a matter of law to prove all of the elements of criminal conspiracy beyond a reasonable doubt.

The judgment of sentence for criminal conspiracy is, therefore, reversed, the judgments of sentence for unauthorized use of an automobile and theft by receiving stolen property are affirmed, and the case is remanded for resentencing on these latter offenses.

WATKINS, J., files a concurring and dissenting opinion.

WATKINS, Judge, concurring and dissenting:

I concur with that portion of the Majority Opinion which holds that the lower court's charge to the jury was fair and impartial and did not constitute a violation of the appellant's Constitutional right to a fair and impartial trial.

I respectfully dissent to the second part of the Majority Opinion which holds that the Commonwealth failed to establish sufficient evidence to sustain the defendant's conviction for the offense of criminal conspiracy.

In determining whether the evidence was sufficient to sustain the verdict we must consider all the evidence in the light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977). A defendant may also be convicted on circumstantial evidence. *Commonwealth v. Long*, 470 Pa. 204, 368 A.2d 265 (1977). It is not necessary to prove an explicit agreement to carry out a criminal act in order to prove conspiracy. *Commonwealth v. Minnich*, 236 Pa.Super. 285, 344 A.2d 525 (1975). While no explicit agreement was proven in the instant case the Commonwealth did prove: that the defendant was accompanied by three other persons in the stolen vehicle several hours after it was stolen; that all four actors left the stolen vehicle together after they heard the defendant tell the officer that he could produce proof of ownership of the vehicle if he were permitted to enter a certain house he had identified as his home; that all four actors entered the house together after which all the lights therein were extinguished; and that all four actors failed to respond to the officer's subsequent repeated knockings on the door. From this set of circumstances, a jury could infer beyond a reasonable doubt that the defendant had conspired with the other actors to remove the vehicle from its owner.

The Majority holds that these facts are insufficient to establish that any of the three passengers in the vehicle had conspired with the defendant to commit the above-mentioned offenses. The Majority states that a fact finder could believe that the first time the passengers knew that the vehicle was stolen was after the policeman knocked on the door. While this is certainly possible, I would hold that the determination of this was a matter within the province of the jury. Of course, the jury did not believe what the Majority assumes. I would hold that there was sufficient evidence to enable the fact finder to decide as it did and would affirm the defendant's conviction on the conspiracy charge.