462 A.2d 218

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony WHITING, Appellant.**

Supreme Court of Pennsylvania.

Argued April 25, 1983.

Decided July 8, 1983.

John W. Packel, Chief, Appeals Div., Leonard Sosnou, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Steven Cooperstein, Asst. Dist. Attys., for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

On November 17, 1973, appellant Anthony Whiting was convicted by a jury of rape, burglary, robbery, assault, extortion and terroristic threats. Post-verdict motions were denied and appellant was sentenced to a term of imprisonment of five to ten years. On appeal, the Superior Court affirmed. *Commonwealth v. Whiting*, 278 Pa.Super. 519, 420 A.2d 662 (1980). We granted appellant's petition for allowance of appeal and we now reverse.

Appellant contends that the trial judge committed reversible error during his charge to the jury when he expressed his

personal opinion as to the credibility of the complainant and appellant's alibi witnesses. At the close of the trial, the judge instructed the jury, in pertinent part, as follows:

In deciding which conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on each side. You may find that the testimony of a few witnesses—just one witness—is more believable than the opposing testimony of a greater number of witnesses.

On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence. You should evaluate the testimony of [the complainant] Ida Williams with special care, in view of Ida Williams' emotional involvement and the difficulty of determining the truth with respect to the crime charged, which is one that is usually carried out in private.

You can determine for yourselves what her appearance was. I cannot influence you. *I can say that I thought she was a very direct witness who stood up extremely well under circumstances that must have been extremely distressing and painful to her.*

Now, before you find the defendant guilty of the crime charged in this case, you must be convinced beyond a reasonable doubt that the act charged did, in fact, occur and it occurred without Ida Williams consent.

One of the factors to be considered in a case of this kind is as to whether a complaint was promptly made to the police. *I would say, from the facts as I have heard them, Ida Williams proceeded with all commendable and due haste to immediately go to her daughter for assistance and immediately report what had occurred to her, immediately to the police.*

. . . .

Ida Williams testified that she did not see any particular mark or scars on the defendant. One of the witnesses for the defense stated that at the time of the lineup there was blood coming out of the corner of the mouth of the

defendant at the time and that somehow the inference would be that because blood was coming out of his mouth that an inference that you may draw—that is entirely up to you—that that somehow identified him as the person and it was upon that that Ida Williams made her identification.

*Now, in my opinion, that is just not consistent.* *She said she did not see any scars or any identification on him at all at the line-up or any other time.* But that's for you to determine.

. . . .

After you have considered everything, what it all comes down to is to use your common sense as to what did happen in this housing project and did this person who, *in my opinion, Ida Williams has testified fairly and truthfully*—was this person really—did she make a proper identification of this defendant, who has been charged and is on trial before you. And you have to do that by considering the way all the witnesses in this case impressed you.

Now, don't be misled by the—where obviously two sets of friends and former friends of this defendant that are—whose opinion may or may not be reliable as to where he was. Do not be impressed by the fact that all of the witnesses testified—the alibi witnesses testified that between the hours of—I think four or five witnesses said that on June 14th of this year, that Momma's birthday party, between the hours of noon time and 9:00 P.M. all the people stayed in the house and nobody ever left the house.

The only impression—you can decide whether that impresses you—*but that kind of consistency, in my opinion, is quite suspect.* *I don't—I think it's impossible that four people would stay in a house on a summer day, apparently, and nobody left the house.* *I mean, it's that sort of determined consistency that would, in my opinion, raise some question as to all of the testimony of the people— that those witnesses have given.* But that is for you to

determine. You may be impressed by it. It's for you to determine.

(Emphasis supplied.)

> Although this Court has recognized the duty of the trial court to aid the jury in understanding and clarifying the issues to be resolved, the court's charge should be a calm and dispassionate one. . . . The jury depends on the trial court for guidance and it will give great weight to any expressions of the court's personal opinion. . . . To preserve a defendant's right to a fair trial, the trial court must be careful to remain absolutely impartial, and not to invade the province of the jury.

*Commonwealth v. Whitfield,* 474 Pa. 27, 34–35, 376 A.2d 617, 621 (1977). *See also Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972); ABA Standards for Criminal Justice 15–3.8(a) (1980) ("The trial judge should not express or otherwise indicate to the jury his or her personal opinion whether the defendant is guilty or express an opinion that certain testimony is worthy or unworthy of belief.").

In this case, the trial judge did not simply instruct the jury on the law, nor did he simply review the testimony for the jury. Rather, he offered his opinion to the jury that the complainant was a truthful witness, *and* that the version of events to which appellant's alibi witnesses testified was highly improbable. Such partiality on the part of the trial judge is impermissible.

We recognize that "[e]rror cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls." *Commonwealth v. Woodward,* 483 Pa. 1, 4, 394 A.2d 508, 510 (1978). Nevertheless, we have concluded that the impact of the opinions offered by the trial judge in this case—that the complainant was truthful and credible, and that the testimony of appellant's alibi witnesses was highly suspect—far outweighed the impact of any general instructions given by the trial judge informing the jury that it was responsible for the resolution of all factual conflicts and determinations as to the credibility of witnesses. *See Archambault, supra,* 448 Pa. at 96, 290 A.2d

at 75 (cautionary instructions that the jury is the final arbiter of the verdict are insufficient to vitiate the impact of the judge's opinionated statements).

The trial judge's opinionated commentary in this case invaded the province of the jury and denied appellant his right to a fair trial. Accordingly, the order of the Superior Court is reversed and the case is remanded for a new trial.*

McDERMOTT, J., filed a dissenting opinion.

McDERMOTT, Justice, dissenting.

When a trial judge has repeatedly and exhaustively instructed a jury that they are the sole finders of fact and determiners of credibility, and where the charge as a whole makes this manifest, an appellate court errs in granting reversal based upon the consideration of isolated excerpts of that charge. That is the posture in which the majority is unfortunately to be found in this case. The Court should affirm appellant's convictions of rape, robbery, simple assault, terroristic threats, and burglary, upon the reasoning of the Superior Court *en banc* majority. Accordingly, I dissent.

The controlling law was set out in *Commonwealth v. Woodward,* 483 Pa. 1, 394 A.2d 508 (1978). There we stated the following:

> This Court has consistently held that, in reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole. *Commonwealth v. Lesher,* 473 Pa. 141, 373 A.2d 1088 (1977). Error cannot be predicated on isolated excerpts of the charge. It is the general effect of the charge that controls. *See,*

---

* Because of our resolution of this issue, we need not consider the remaining issues raised by appellant, namely: 1) that appellant was denied a fair trial because of the trial judge's erroneous evidentiary rulings; and 2) that the trial judge erred in not granting a mistrial after the Commonwealth elicited testimony concerning appellant's silence at the time of his arrest.

*Commonwealth v. Archambault,* 448 Pa. 90, 290 A.2d 72 (1972).

483 Pa. at 4, 394 A.2d at 510.

Likewise, in *Commonwealth v. Walker,* 459 Pa. 12, 326 A.2d 311 (1974), we held a trial court's comments non-prejudicial where "Other portions of the charge more than adequately cautioned the jury that they were the sole judge as to credibility of witnesses and that they could convict only if they were convinced of appellant's guilt beyond a reasonable doubt." 459 Pa. at 16, 326 A.2d at 313.

Applying that analysis to this case, it is abundantly clear that the trial court, both in the excerpts cited by the majority and throughout the charge as a whole, repeatedly and specifically instructed the jury of their function. Indeed, even the brief portion of the charge from which the majority excerpts and supplies emphases contains no fewer than six (6) reminders from judge to jury concerning their role as sole fact-finders. These repeated reminders, interspersed throughout that selfsame portion of the charge, could have had no other conceivable affect than to negate any possible adverse inference stemming from the judge's comments. If the emphasis were instead supplied to those passages (e.g., "*You can determine for yourselves what her appearance was. I cannot influence you.*") the charge would read quite differently. Yet, the function of a reviewing court is to emphasize neither type of particular excerpt, but rather to consider the effect of the charge as a whole. To conclude that, notwithstanding these frequent instructions, the roles of judge and jury became hopelessly tangled, is to denigrate the ability and intelligence of both.

The portions of the charge cited by the majority themselves contain more than adequate antidote to purge any ills engendered thereby. Taken together with the rest of the charge, and considering the charge as a whole, as we must, I have no doubt that the trial court and Superior Court analyzed this issue accurately. We should affirm.