J-A28018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: W.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: W.C., MINOR | : | |
| | : | No. 169 EDA 2024 |

Appeal from the Dispositional Order Entered December 18, 2023
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-JV-0000312-2023

BEFORE:  PANELLA, P.J.E., STABILE, J., and NICHOLS, J.

MEMORANDUM BY STABILE, J.:                **FILED JUNE 27, 2025**

Appellant, W.C., appeals from the December 18, 2023, order of disposition.  The juvenile court imposed no penalty after adjudicating Appellant delinquent on charges of receiving stolen property, conspiracy, and unauthorized use of a motor vehicle.[1]  We affirm.

The trial court recited the following facts in its Pa.R.A.P. 1925(a) opinion:

> The first witness to testify was Police Officer Michael Wolf, Badge Number 9920, assigned to the Philadelphia Police Department's 24th Police District.  Officer Wolf testified that his tour of duty on February [15], 2023, around 10:00 p.m., took him to the 200 block of East Cambria Street.  At that time, the officer contacted [Appellant], who was identified in the courtroom by articles of clothing.  Officer Wolf and his partner, Officer Murphy, stopped a vehicle for the investigation of a 2023 silver Hyundai Elantra with Florida tag AH34C1 reported stolen a day prior.  After

_____

[1]  18 Pa.C.S.A. §§ 3925, 903, 3928.

Officer Wolf pulled up behind the stopped vehicle in their marked patrol car, he saw [Appellant] exiting the passenger side of the stolen vehicle and along with the driver of the vehicle attempted to run. Officer Wolf then ran behind the [Appellant] and apprehended him in the middle of the 200 block of Cambria and apprehended the driver. Officer Wolf testified that the vehicles entire steering and ignition column was completely damaged, and all the internal components were exposed. The Commonwealth entered a video from Officer Wolf's body-worn camera footage, marked as exhibit D-1, and a bio report of the area where Officer Wolf apprehended [Appellant], marked as D-2.

The complaining witness, James Williams, did not testify at the hearing, but there was a stipulation by and between counsel that if called to testify, he would testify that he was renting the reported stolen vehicle from PV Holding Corp. under a rental agreement. If a representative from PV Holding Corp. were called to testify, he would say that as the owner of the vehicle, only the complaining witness had permission to operate the vehicle. The complaining witness did not know [Appellant] or give [Appellant] permission to utilize the vehicle on February 15, 2023, the day of the incident.

Trial Court Opinion, 3/25/24, at 3-4 (record citations omitted).

On April 28, 2023, the Commonwealth filed its delinquency petition. The adjudicatory and dispositional hearing took place on December 18, 2023. Based on Officer Wolf's testimony and body camera footage, the juvenile court adjudicated Appellant delinquent on all three charges. Because Appellant reached the age of majority shortly after the filing of the instant petition and was serving a criminal probation sentence by the time of his adjudication, the juvenile court imposed no further penalty. The court reasoned that any treatment and services would be duplicative of what Appellant was receiving in connection with his criminal sentence.

Appellant filed this timely appeal on January 10, 2024, in which he presents three questions for our review:

A. Was the evidence insufficient to establish that [Appellant] committed the act of receiving stolen property, as there was no evidence that [Appellant] either intentionally received the property or knew that the property had been stolen; and was the evidence insufficient to establish that [Appellant] committed the act of unauthorized use of a vehicle, as there was no evidence that [Appellant] operated the vehicle, or knew of, or was at least reckless with respect to, the owner's lack of consent to operate the vehicle?

B. Was the evidence insufficient to establish that [Appellant] committed the act of conspiracy, as there was no evidence of a conspiratorial agreement?

C. Did the trial court err and abuse its discretion in entering an adjudication of delinquency, where the evidence was insufficient to establish that [Appellant] was in need of treatment, supervision, or rehabilitation, as the trial court heard no testimony on this issue, but rather relied solely on the fact that [Appellant] was under adult supervision?

Appellant's Brief at 3.

Appellant challenges the sufficiency of the evidence in support of his adjudication of delinquency for receiving stolen property, unauthorized use of a motor vehicle, and conspiracy.

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to

find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*In re E.L.W.*, 273 A.3d 1202, 1205 (Pa. Super. 2022). For the adjudication on receiving stolen property, the Commonwealth was required to prove that Appellant (1) intentionally acquired the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) did so with the intent to deprive the owner of it permanently. *Commonwealth v. Gomez*, 224 A.3d 1095 (Pa. Super. 2019); 18 Pa.C.S.A. § 3925. Because one or more people may be in joint possession of a vehicle, the Commonwealth did not need to prove that Appellant was the driver of the stolen vehicle in order to obtain an adjudication of delinquency under § 3925. *In re Scott*, 566 A.2d 266, 267 (Pa. Super. 1989), *appeal denied*, 593 A.2d 421 (Pa. 1990). A showing that a suspect is a passenger in a vehicle, without more, is not enough to establish joint or constructive possession. *Id.* But flight from police combined with the stolen property being in a condition that visibly evidences its theft can be sufficient to prove a violation of § 3925. *Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. 1991), *appeal denied*, 600 A.2d 533 (Pa. 1991).

- 4 -

Appellant argues that he did not know that the vehicle was stolen; that that his presence at the scene is insufficient; and that the flight of a juvenile is not indicative of guilt. He cites **In re Waldron**, 353 A.2d 43 (Pa. Super. 1975), in which this Court explained that flight by a juvenile is not always indicative of guilt, inasmuch as juveniles may panic and depart from the scene of a crime regardless of guilt. In that case, the defendant admitted he had driven the vehicle in question, but claimed he had permission from his friend. As the defendant and his friend fled the scene of an accident that occurred while the friend was driving, the defendant claimed his friend told him, for the first time, that the vehicle was stolen. This Court reversed the defendant's adjudication of delinquency[2] reasoning as follows:

> The fact that [Waldron] fled after the accident does not establish that he knew prior to the accident that the vehicle had been stolen. It is a matter of common knowledge that many drivers, particularly juveniles, panic after an accident and leave the scene—even without receiving such disconcerting information. [Waldron's] conduct was not so inconsistent with innocence as to lead us to conclude that the conviction was predicated on anything more than mere conjecture of suspicion.

*Id.* at 48.

As described above, the instant record reflects that Appellant fled from the passenger side of the stolen vehicle after the police attempted to stop the vehicle. The record also reflects that the steering column was visibly damaged

---

[2] The **Waldron** Court addressed an adjudication under § 3928, not § 3925. We address the distinction between these sections *infra.*

in a way that was necessary to operate the vehicle without the key. Because the car's interior contained visible evidence that the car was stolen, the instant facts are distinguishable from *Waldron*. Further, there is no argument in the instant case that Appellant was fleeing in panic from the scene of an accident, because there was no accident. Moreover, *Scott*, like *Waldron*, involved a stolen vehicle that crashed while being followed by police. *Scott*, 566 A.2d at 267. The *Scott* Court nonetheless distinguished *Waldron*, noting the evidence in *Waldron* that the defendant was unaware, until **after** he began to flee, that the vehicle was stolen. *Id.* at 268-69.

Further, the *Scott* Court relied on *Commonwealth v. Murray*, 371 A.2d 910 (Pa. Super. 1977), wherein the defendant, who was not proven to be the driver of the stolen vehicle, was one of two people who fled from a car with police in pursuit. Upon inspection, the car had no keys in the ignition and the ignition wires were hanging from under the dashboard. *Id.* at 911-12. The *Murray* Court reasoned that the condition of the stolen car, the defendant's lack of relationship with the victim of the theft, and the defendant's conduct immediately prior to his arrest, provided sufficient bases to establish the defendant's knowledge that the car was stolen. *Id.* at 913. Further, the lack of evidence that Appellant was the driver was immaterial to a finding of joint possession, because the defendant either rode in or drove a vehicle he knew to be stolen. *Id.*

Here, as in **Murray** and **Scott**, the interior of the vehicle contained visible evidence of theft. The ignition column of the car involved in this case was damaged, with its internal components visible. In other words, the car was visibly damaged in a way that allowed it to be driven without a key. Appellant would have us ignore this fact, arguing that there is no evidence that he observed the damage to the steering column, but Appellant's argument invites us to draw inferences unfavorable to the Commonwealth. Our standard of review requires us to draw reasonable inference in favor of the Commonwealth. **E.L.W.**, 273 A.3d at 1205. Because Appellant was the passenger in a car with visible evidence of its theft, it is reasonable to infer that Appellant observed the damage. Moreover, there is no evidence here, as there was in **Waldron**, that Appellant first learned of the vehicle's theft **after** he began to flee. Rather, the condition of the vehicle's interior supports the opposite inference. Appellant's reliance on **Waldron** is misplaced. Based on the foregoing, we conclude that the Commonwealth produced sufficient evidence to sustain the adjudication of delinquency for receiving stolen property and unauthorized use of an automobile.[3]

---

[3] Regarding unauthorized use of an automobile, we note that § 3928 applies to people who operate the automobile in question. 18 Pa.C.S.A. § 3928. Instantly, Appellant was the passenger. Thus, the question is whether a passenger in joint possession of a stolen automobile can be liable under § 3928. In **Scott**, this Court held in the affirmative. There, as here, the evidence indicated that the juvenile was a passenger in joint possession of the stolen vehicle. **Scott**, 566 A.2d at 266. The **Scott** Court affirmed the adjudication under §3928.

With his second question presented, Appellant challenges the sufficiency of the evidence in support of his conviction for conspiracy.

> To convict of […] conspiracy, the evidence must establish that the defendant entered an agreement with another person to commit or aid in the commission of an unlawful act, that the conspirators acted with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. 18 Pa.C.S.A. § 903. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.
>
> Once a conspiracy is established, the actions of each coconspirator may be imputed to the other conspirators. In this regard, [t]he law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design.

**Commonwealth v. Saunders**, 946 A.2d 776, 781 (Pa. Super. 2008), *appeal denied*, 958 A.2d 1047 (Pa. 2008).

Once again, the argument centers on whether Appellant's presence in a vehicle with visible evidence of its theft, combined with his flight from police, is sufficient to prove that he conspired with his partner to steal the car. More specifically, the question before us is whether these facts are sufficient to demonstrate an agreement between Appellant and his partner to commit an unlawful act.

Appellant relies on **Commonwealth v. Emmi**, 434 A.2d 142 (Pa. Super. 1981), in which the defendant drive was convicted of conspiring with three unidentified passengers to steal the vehicle in which he was stopped for running a red light. Because the Commonwealth provided no evidence to support a conclusion that the three unidentified passengers knew that the defendant was driving a stolen vehicle—at least not until after they fled from the vehicle—this Court reversed the conspiracy conviction. **Id.** at 146. "Such knowledge is crucial to the process of inferring that there was a shared intent or conspiratorial agreement between [defendant] and at least one of the unknown passengers." **Id.** Thus, no evidence in **Emmi** indicated that the passengers knew of the vehicle's theft. Appellant's argument in the instant case, and his reliance on **Emmi** in challenging his conspiracy adjudication, rests on his theory that his flight, combined with the condition of the steering column, are insufficient to demonstrate his own timely knowledge of the vehicle's theft in this case. We have already rejected that argument above. Further, the **Emmi** Court wrote that a conviction for conspiracy in that case rested on nothing but conjecture or surmise. That is not true in the instant case, in which the record contains evidence from which a fact finder could reasonably infer that **both** Appellant and the driver were aware that the vehicle was stolen before they fled from the police.

The **Murray** Court found that the facts of the defendant's attempted escape were also sufficient to prove conspiracy. **Murray**, 371 A.2d at 913.

There, as here, the defendant was one of two people who fled from a vehicle with police in pursuit, where vehicle's interior contained visible evidence of its theft. There, as here, the facts are sufficient to infer an agreement between Appellant and the driver. For the foregoing reasons, Appellant's challenge to his conspiracy adjudication fails.

Finally, Appellant argues that his adjudication was improper because juvenile court failed to find that he needed treatment. Because Appellant was serving an adult probation sentence as of the time of his adjudication in the instant matter, the juvenile court concluded that any treatment or supervision it imposed would be duplicative. Thus, the juvenile court adjudicated Appellant delinquent but imposed no treatment, supervision, or rehabilitation.

Appellant, notes, correctly, that an adjudication of delinquency requires a finding that a juvenile has committed a delinquent act, and that the juvenile needs treatment, supervision, or rehabilitation. *Commonwealth v. M.W.*, 39 A.3d 958, 964 (Pa. 2012) (citing 42 Pa.C.S.A. § 6341(b)). Indeed, if the court finds that the child is not in need of treatment, supervision, or rehabilitation, it must dismiss the proceeding and discharge the child, per § 6341(b). That section also provides, however, that "evidence of the commission of acts which constitute a felony shall be sufficient to sustain a finding that the child is in need of treatment [....]" 42 Pa.C.S.A. § 6341(b). A theft offense involving an automobile is a third degree felony. 18 Pa.C.S.A. § 3903(a.1). Thus, Appellant's adjudications of delinquency were, of

themselves, findings of Appellant's need for treatment, rehabilitation, or supervision. The juvenile court simply determined not to impose anything in addition to Appellant's adult probation sentence. Appellant cites no law forbidding that action.

Because we have determined that none of Appellant's arguments merit relief, we affirm the order of disposition.

Order of disposition affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/27/2025