J-S32036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY ARTHUR MAY | : | |
| | : | |
| Appellant | : | No. 79 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 12, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005376-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHARY ARTHUR MAY | : | |
| | : | |
| Appellant | : | No. 80 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 12, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005403-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 31, 2022**

Zachary A. May appeals from the judgment of sentence, imposed in the Court of Common Pleas of Lancaster County, following his convictions for two counts each of burglary,[1] institutional vandalism,[2] and theft by unlawful

---

[1] 18 Pa.C.S. § 3502(a)(4).

[2] *Id.* at § 3307(a)(4).

taking[3] stemming from burglaries which occurred on June 15, 2019 and June 28, 2019. May challenges the sufficiency of evidence. After review, we affirm.

This case stems from a string of six burglaries that took place in Warwick Township and Manheim Township, which border each other. The first occurred between June 5-6, 2019, in which the token dispenser was broken into at the driving range of Overlook Golf Course and $1,038 was stolen. N.T. Jury Trial, 8/3/21, at 163; Commonwealth Exhibit 2. The second occurred on June 6-7, 2019, at Feedmobile, Inc. and the neighboring High Sports Entertainment Complex, at which time $2,663 was stolen. N.T. Jury Trial, 8/2/21, at 110; Commonwealth Exhibit 3 and 3A. The third occurred on June 15-16, 2019, at the Overlook Activities Center Pool and Skating Rink, at which time office doors were damaged and $1,905.50 was stolen. *Id.* at 132, 134, 140; Commonwealth Exhibit 5 and 9. The fourth occurred on June 16-17, 2021, at the Overlook Golf Course maintenance building, in which token machines were broken into and $1,933.20 was stolen. N.T. Jury Trial, 8/4/21, at 158, 163; Commonwealth Exhibit 6. The fifth occurred on June 28-29, 2019, at the Overlook Activities Center/Arcade, where $300 was stolen. *Id.* at 325; N.T. Jury Trial, 8/2/21, at 146-47; Commonwealth Exhibit 7 and 10. The sixth occurred on September 4-5, 2019, at the Overlook Pro Shop and Sand Trap

---

[3] *Id.* at § 3921.

Restaurant, in which $910 was taken from the safe. N.T. Jury Trial, 8/3/21, at 170, 211; Commonwealth Exhibit 11 and 12.[4]

After the second burglary at the High Sports Entertainment Complex on June 6-7, an employee provided the police with surveillance images showing a man wearing a Carhartt shirt, with a distinctive cross tattoo on his right hand.[5] N.T. Jury Trial, 8/2/21, at 119; Commonwealth Exhibit 3A, Slide 1. The employee testified that this man "looked standoffish" and was "watching and observing what was going on around him," but did not "look at what [the] facility had to offer," which included go-karts and a mini golf course. N.T. Jury Trial, 8/2/21, at 117-18, 120. Police were unable to connect this tattoo to a suspect through their data base. *Id.* at 128.

Surveillance videos from the June 15 burglary show the suspect leaving the premises wearing red shorts. *Id.*, 8/3/21, at 184; Commonwealth Exhibit 9.7. Videos also show the suspect prying open the coin box of various machines in the game room located in the Overlook Park facility. *See* Commonwealth Exhibit 9.4. Surveillance videos from the June 28 burglary depict the suspect leaving the arcade wearing an olive-colored backpack. N.T. Jury Trial, 8/3/21, at 195; Commonwealth Exhibit 10.46. Additionally, pictures of the Arcade show a change machine that had been pried open with some sort of tool. N.T. Jury Trial, 8/2/21, at 144-45; Commonwealth Exhibit

---

[4] Any mention of those four other burglaries is for the purpose of discussing evidence also presented to the jury.

[5] Photographs are from surveillance footage dated June 6, 2019.

7. Manheim Township Officer Nelson DeJesus testified that, "bolt cutters were used on the padlocks, the spin locks were drilled open and then the side of the machines where they come together were pried open."  N.T. Jury Trial, 8/2/21, at 145; Commonwealth Exhibit 7, Slide 6.

Still unable to concretely identify the perpetrator, police set up trail cameras in the nearby Pro Shop and Sand Trap Restaurant,[6] also in Overlook Park; neither of these facilities had cameras or had been burglarized.  N.T. Jury Trial, 8/3/21, at 199.  Both of these establishments were subsequently burglarized on the night of September 4-5, 2019.  Images from the trail camera showed the suspect wearing a SDR Mechanical shirt, Husky gloves, and a Carhartt hat.  **See** Commonwealth Exhibit 12, Slide 23, Slide 35.  Thereafter, police reviewed a list of SDR Mechanical employees, and found that an employee, May, lived close to the Overlook Park recreation center.  N.T. Jury Trial, 8/3/21, at 217.

Subsequently, police executed a search warrant at May's home, where they found a Carhartt shirt identical to the one seen in the June 6 surveillance frame, Husky gloves identical to those seen in the September 4-5 trail camera photos, an olive-green backpack with a hammer inside, SDR Mechanical shirts, red shorts, and various pry bars and drills.  **See** Commonwealth Exhibit 13 (photos taken of items found during execution of the search warrant).

---

[6] The Pro Shop and Sand Trap Restaurant are next door to each other.  N.T. Jury Trial, 8/3/21, at 170.

- 4 -

Additionally, a search of May's Facebook page revealed a picture of May with a cross tattoo on his right hand. **See** Commonwealth Exhibit 17. Lieutenant Freysz testified regarding the Facebook photo: "It's a picture of [May] standing with a female, and his right hand is exposed in the image[,] and it shows the tattoo, the cross tattoo, between his thumb and his index finger." N.T. Jury Trial, 8/2/21, at 221.

Lieutenant Freysz's testimony connects the clothing and tools identified on surveillance videos to the items found in May's home, including the Husky gloves, the Carhartt hat, the SDR Mechanical shirt, the olive-green backpack, and the hammer found inside the olive-green backpack:

> The gloves that were found in Mr. May's house–had characteristics that were identical. There [were] features of those gloves that were missing in one glove in the trail camera photographs that is consistent with the gloves that we found at [May's] house.[7]
>
> \* \* \*
>
> [A]nd the hat that I believe is–is the Carhartt hat that we found inside of his residence.[8]
>
> \* \* \*
>
> The outer shirt that [the perpetrator] is wearing is actually turned inside out because you can see the manufacture's label printed at the top of the neck. But then underneath that shirt, you could

---

[7] **See also** Commonwealth Exhibit 12, Slide 35 (September 4-5 trail camera photos showing suspect wearing Husky gloves); Commonwealth Exhibit 13, Slide 10 (photo of Husky gloves found in May's home).

[8] **See also** Commonwealth Exhibit 12, Slide 23 (September 4-5 trail camera photos showing suspect wearing a Carhartt hat); Commonwealth Exhibit 13, Slide 26 (photo of Carhartt hat found in May's home).

make out the logo of what appeared to be SDR Mechanical, which is a business name.[9]

* * *

As [the perpetrator] was departing the scene[,] he was carrying a green[-]colored backpack. That appeared to be similar in color to the backpack that was found in [May's] laundry room that had the hammer in it and the gloves on top of it.[10]

* * *

There it looked like [the perpetrator] is using a hammer or something [] to beat the machine, possibly try[ing] to take the [] turn lock out of the machine.[11]

N.T. Jury Trial, 8/3/21, at 194 (testimony regarding use of hammer), 206 (testimony regarding SDR Mechanical shirt), 306-08 (testimony regarding Husky gloves, Carhartt hat and olive-green backpack with the hammer inside).

Christopher Erb, a detective for the Lancaster County District Attorney's Office and who was recognized by the trial court as an expert in the area of cell phone data analysis, testified that, to a reasonable degree of professional certainty, cell photo location data showed May in the vicinity of the Overlook

---

[9] **See also** Commonwealth Exhibit 12, Slide 23 (trail camera photos from September 4-5 showing suspect wearing a SDR Mechanical shirt); Commonwealth Exhibit 13, Slide 22 (photo of SDR Mechanical shirt found May's home).

[10] **See also** Commonwealth Exhibit 10.46 (June 28 surveillance video showing suspect wearing olive-green backpack); Commonwealth Exhibit 13, Slide 12 (photo of olive-green backpack found in May's home).

[11] **See also** N.T. Jury Trial, 8/3/21, at 286 (testimony that a hammer was found inside the olive-green backpack); Commonwealth Exhibit 10.26; Commonwealth Exhibit 13, Slide 11 (photo of hammer inside olive-green backpack found in May's home).

Activities Center on June 15 and June 28. N.T. Jury Trial, 8/3/21, at 232, 237, 251-52. The burglary on June 15 took place between 4:30 AM and 5:01 AM. *Id.* at 179, 187-88. Phone data, accurate to within 600 meters, shows that May was just east of the intersection of Fruitville Pike and Belair Drive at 4:29 AM, on the western side of Overlook Park. *Id.*, at 259; Commonwealth Exhibit 14 Supplement, Slide 4. The burglary on the night of June 28-29 took place between 11:26 PM and 12:03 PM. Phone data, accurate to within 5,000 meters and 1,500 meters, respectively, shows that May was slightly west of Route 501 at 11:24 PM and at 11:36 PM, on the eastern side of Overlook Park. Commonwealth Exhibit 14 Supplement, Slides 6-8.

May was also identified as the perpetrator of all the burglaries based on his walk, height, and build. Lieutenant Freysz testified that the individual in the June 15 burglary is the same as the individual in the June 28 surveillance video: "[B]ased on his walk, his height[, and] his weight. To me he appears to be approximately six feet tall, I would estimate 200 to 240 pounds. But based on his build, his gait, the way he walks, it seems to be the same person [] observed in the previous incident." N.T. Jury Trial, 8/3/21, at 188-89.

On August 2, 2021, May proceeded to trial and May was convicted of, *inter alia*, the above-mentioned crimes. The trial court ordered a pre-sentence investigation and, on November 21, 2021, May was sentenced to an aggregate term of 5 to 15 years' incarceration. N.T. Sentencing, 11/21/21, at 8. On November 22, 2021, May filed a post-sentence motion, which was denied by the trial court without a hearing on November 30, 2021. May filed a timely

notice of appeal on December 30, 2021. Both May and the trial court have complied with Pa. R.A.P. 1925. May raises the following claim for our review:

> Was the evidence presented by the Commonwealth [] sufficient to sustain [] May's convictions on counts 1, 3, 7, 9, 12, and 14, where the Commonwealth did not prove beyond a reasonable doubt that [] May committed the burglaries at Overlook Activities Center on June 15, 2019 and June 28, 2019?

Appellant's Brief, at 7.

Our standard and scope of review of challenges to the sufficiency of the evidence is well-settled:

> [W]e evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, the Commonwealth may sustain its burden solely by means of circumstantial evidence.

***Commonwealth v. Lake***, --- A.3d ---, 2022 PA Super 142, at \*2 (Pa. Super. filed Aug. 15, 2022) (citations and quotations omitted).

> In applying the above test, the entire record must be evaluated[,] and all evidence actually received considered. [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa. Super. 2011). Finally, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Id.* at 872.

Further, to sustain a conviction, evidence of identification need not be positive and certain, and any indefiniteness or uncertainty in the identification testimony goes to its weight. *Commonwealth v. Minnis*, 458 A.2d 231, 234 (Pa. Super. 1983). "[A]lthough identification based solely on common items of clothing and general physical characteristics is insufficient to support a conviction, such evidence may be considered to establish identity along with other circumstances and the proffered identification testimony." *Id.* at 233 (citations omitted).

Reasonable inferences may be drawn from the evidence provided to establish identity where identifications are consistent throughout and mutually corroborating. *Id.* at 234. In *Minnis*, this Court found that evidence was sufficient to establish the identity of the perpetrator of a robbery where a witness identified the defendant by his jacket, the Commonwealth established that the defendant was part of a group standing threateningly close to the victim, and the victim was familiar with defendant as a member of that group. *Id.* at 234.

May contends that the evidence is insufficient to establish his identity and placement at the scene during the June 15, 2019 and June 28, 2019 burglaries and related crimes. Specifically, he claims the surveillance videos are too blurry to determine the clothing worn and tools used by the

perpetrator, as well as the perpetrator's physical characteristics. Appellant's Brief, at 21-22. Second, May argues that the items seen on the surveillance videos and subsequently found in May's home, as well as the physical characteristics of the suspect, are generic. Appellant's Brief, at 22. Third, May claims that the cell phone data showing his location during the burglaries is inconclusive. Appellant's Brief, at 27. Fourth, May argues that the burglaries were too dissimilar to constitute signature crimes and, thus, do not establish a modus operandi. Appellant's Brief, at 39.

We address May's four sub-claims separately and find that May is entitled to no relief. Although the individual pieces of evidence would not, by themselves, be convincing, taken together, and viewing the evidence in the light most favorable to the Commonwealth, the evidence connecting May to the burglaries and related crimes is consistent and mutually corroborating. Thus, the jury could reasonably have inferred that May was the perpetrator.

Although May is correct that the surveillance videos from the June 15 and June 28 burglaries are blurry, they clearly show clothing worn and tools used during the burglary, as well as some aspects of the physical appearance of the perpetrator. Indeed, the perpetrator is wearing red shorts in a June 15 surveillance video and carrying an olive-colored backpack in a June 28 surveillance video. Additionally, the footage from June 28 clearly depicts the perpetrator standing next to and using a long thin tool to pry open a machine and testimony shows that this tool is likely a pry bar. Commonwealth 9.4; *see also* N.T. Jury Trial, 8/2/21, at 144 (Police Officer Nelson DeJesus testified

- 10 -

that Commonwealth Exhibit 7, Slide 4 (photos of the crime scene the day after the June 28 burglary) shows that "[t]he machines are all pried open with some sort of pry tool"). Moreover, relying on surveillance footage, Lieutenant Freysz testified that the individual in the June 15 footage was the same as the individual in the June 28 footage based on gait and build. *Id.*, 8/3/21, at 188-89.

Additionally, not all surveillance showing the suspect is blurred. The June 5-6 surveillance video frames clearly show an individual with a distinctive cross tattoo on his right hand and wearing a Carhartt shirt. Commonwealth Exhibit 3A, Slide 1. Moreover, trail camera frames from September 4-5 show the suspect wearing an SDR Mechanical shirt and Husky gloves. Commonwealth Exhibit 12, Slide 23 (SDR Mechanical shirt), Slide 35 (Husky gloves).

Although, individually, the evidence is generic, taken together, the clothing, tools and physical characteristics of the perpetrator are consistent throughout and mutually corroborating. A jury, therefore, could reasonably infer that May was the perpetrator of all the burglaries. *Minnis, supra.* Indeed, Lieutenant Freysz's testimony connects each of the following items seen on surveillance footage to the items found in May's apartment: a pair of Husky gloves, a Carhartt hat, a SDR Mechanical shirt, an olive-green backpack, and a hammer. Importantly, the tattoo seen on the individual in the June 6 surveillance frames matches the tattoo seen on May's right hand in a photo found on his Facebook page. N.T. Jury Trial, 8/2/21, at 221.

Moreover, the jury could reasonably have inferred that the individual in the June 15 surveillance and June 28 surveillance was the same based on their gait and build. *Id.*, 8/3/21, at 188-89.

Next, May argues cell phone data location on June 15 and June 28 could just as easily place him at, or on the way to or from, his home at the time the burglaries took place. Regarding the June 15 burglary, May argues that his house is within 600 meters of the data point and, thus, he could have been at home during this time. Appellant's Brief, at 23-24. Regarding the June 28th burglary, May argues that he could have been traveling to or from home at the time when these points were taken due to their range of accuracy. Appellant's Brief, at 27. He is entitled to no relief.

To support his argument, May cites to **Commonwealth v. Long,** 368 A.2d 265 (Pa. 1997). There, the Pennsylvania Supreme Court found that evidence was insufficient to uphold the conviction where head and pubic hair found in the victim's bedroom was consistent with the defendant's hair types, but was also consistent with the victim's daughter's hair types. The Court in *Long* reasoned that on the basis of evidence presented, including unidentified foreign head and pubic hair found in the victim's bedroom and car, an unidentified footprint, and the fact that the defendant was seen eight or nine miles from the victim's home after the time of the death, "the jury would have had to guess whether the defendant committed the crime." *Id.* at 269.

Here, unlike in *Long*, the jury was provided with additional evidence, upon which it could have made reasonable inferences regarding the

significance of the cell phone data. Indeed, May was identified as the perpetrator based on cell phone data **as well as** various clothing items and tools seen on surveillance footage and found in May's home and May's tattoo, which matched the tattoo seen in the June 6-7 surveillance frames. The evidence, taken together, is consistent throughout and mutually corroborating and, thus, a reasonable inference can be made that May was the perpetrator. ***Minnis, supra.***

Additionally, the jury's determination of whether May's cell phone data location places him at Overlook Park during the times of the burglaries are questions of fact that are left for the jury to determine after it had the benefit of hearing Erb's expert testimony. On appeal, this Court is not permitted to substitute our factual findings for those of the jury. ***Orr, supra.***

Fourth, May argues that the crimes do not involve the same modus operandi. To determine if crimes involve the same modus operandi, this Court compares the methods and circumstances of the separate crimes including "(1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims." ***Commonwealth v. Weakley,*** 972 A.2d 1182, 1189 (Pa. Super. 2009). What is required is "such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others." ***Id.***

Here, modus operandi is demonstrated by the temporal and physical proximity of the burglaries, as well as the method of entry and tools used

- 13 -

during their commission. The burglaries all took place over the summer of 2019 in the Overlook Park area and the nearby High Sports Entertainment Complex. Pry tools were used to enter offices and entertainment areas therein,[12] and were also used to remove coin boxes from various types of token and coin machines. The similarities in the burglaries, combined with the other evidence discussed, *supra*, lead to the reasonable conclusion that May was the perpetrator of the June 15 and June 29 burglaries and related crimes.

In light of the foregoing, we conclude that the evidence, including the reasonable inferences to be drawn therefrom, was sufficient to allow a jury to find that May committed the crimes that took place on June 15, 2019 and June 28, 2019. *Lake, supra.* Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2022

---

[12] The only entry that did not use a pry tool was the Sand Trap Restaurant because the key was stolen from a safe in the Pro Shop, which was also burglarized in the same night. N.T. Jury Trial, 8/3/21, at 170.